[No. B047792. Second Dist., Div. Seven. Mar. 22, 1990.]

KAREN DELAYNE GREENBERGER, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Bierman, Shohat & Loewy, Edward R. Shohat and Marcia A. Morrissey for Petitioner.

No appearance for Respondent.

Ira Reiner, District Attorney, Donald J. Kaplan and Brent Riggs, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**WOODS (Fred), J.**—Does the statutory preference for a joint trial (Pen. Code, § 1098)[1] constitute good cause (§ 1382) to delay for six months the murder trial of an in-custody defendant? Our answer is yes, if, as in the instant case, the circumstances are sufficiently exceptional.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 13, 1983, according to the information, Roy Radin was kidnapped and murdered. On May 3, 1984, June Mincher was murdered and Christian Pierce was the victim of an attempted murder.

Not until September 27, 1988, five and one-half years after the Radin murder, were charges filed. Petitioner, William Molony Mentzer, Alex Lamota Marti, and Robert Ulmer Lowe were charged with having murdered Radin. Mentzer, Lowe, and Robert Leroy Deremer were charged with having murdered Mincher.

On October 2, 1988, petitioner was arrested in Orlando, Florida. About two and a half months later, on December 27, 1988, she waived extradition and on January 12, 1989, was arraigned on the complaint.

Sometime before May 12, 1989, a preliminary hearing for only Lowe and/or Deremer was held.

On May 12, 1989, a second preliminary hearing, this one for petitioner, Mentzer, and Marti began. It did not end until two months later, on July 12, 1989. All three were held to answer.

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

The information charged each of them with the capital murder (§ 187, subd. (a)) and kidnapping (§ 207) of Roy Radin. It also charged Mentzer, in separate counts, with the capital murder of June Mincher and the attempted murder of Christian Pierce (§§ 664/187, subd. (a)).

Petitioner was arraigned on August 4, 1989, and had a trial setting hearing on September 7, 1989. At that hearing petitioner and her two codefendants all waived time until January 8, 1990, the designated trial date.

On November 6, 1989, petitioner's severance motion was denied but the court did sever the Radin charges (counts I and IV) from the Mincher and Pierce charges (counts II and III).

On December 4, 1989, Mentzer and Marti each moved for a lengthy continuance in order to adequately prepare for trial. Marti filed declarations[2] by his investigator and one of his attorneys detailing pretrial investigation deemed essential to his defense. Counsel for Mentzer, at side bar, similarly described extensive investigation necessary for his defense.[3] The court found good cause, granted the continuance motions, and set the trial for all three defendants on July 23, 1990. Petitioner, although she did not oppose the continuance for her codefendants, did object to having *her* trial delayed. She unequivocally did not waive time and insisted upon a January 8, 1990, trial.

On January 16, 1990, petitioner filed a motion to dismiss which was heard and denied on January 23, 1990.

Thereafter, on January 29, 1990, petitioner filed this petition seeking a writ of mandate and/or prohibition directing the trial court to dismiss the information because she had not been brought to trial within the section 1382 statutory period.

## DISCUSSION

*The right to a speedy trial*

■ The right of a criminal defendant to a speedy trial is protected by both the United States Constitution (U.S. Const., 6th Amend.) and the California Constitution (Cal. Const., art. I, § 15). This fundamental

---

[2] The declarations were ordered sealed by the trial court. As requested by petitioner, we have examined them.

[3] These representations were reported and ordered sealed. As requested by petitioner, we have examined them.

constitutional right is "supplemented" (*Townsend* v. *Superior Court* (1975) 15 Cal.3d 774, 781 [126 Cal.Rptr. 251, 543 P.2d 619]) by statutes.

Section 1382 provides that "[t]he court, *unless good cause to the contrary is shown,* shall order the action to be dismissed . . . [w]hen a defendant is not brought to trial in a superior court within 60 days after the . . . filing of the information. . . ." (Italics added.) The 60-day period may be extended "at the request of the defendant or with the defendant's consent." (*Ibid.*)

Section 1098, potentially intersecting section 1382, provides in part: "When two or more defendants are jointly charged with any public offense, whether felony or misdemeanor, they must be tried jointly, unless the court order separate trials."

We begin our consideration of the interplay of these statutory provisions, the interests they promote, and how they bear on section 1382 good cause by examining those cases finding that trial delay was without good cause.

*Not "good cause"*

In *People* v. *Wilson* (1963) 60 Cal.2d 139 [32 Cal.Rptr. 44, 383 P.2d 452] the defendant, charged with murdering his wife and assaulting her companion, consented to a trial beyond 60 days, to August 25. On that date he and his attorney announced ready. But the prosecutor moved for a 67-day continuance, to October 31, on the grounds that he had just finished a long trial, was preparing a motion in another case, *and had not yet taken his vacation.* The court granted the motion and on October 25 denied defendant's motion to dismiss. The Court of Appeal denied his writ and the defendant was tried and convicted.

On appeal, the California Supreme Court summarily found that "[o]n the facts before us there was not a sufficient showing of good cause for such delay." (60 Cal.2d at p. 145.) Thus, the trial court had erred in denying defendant's motion to dismiss and the Court of Appeal had erred in denying his writ. But unlike those procedural settings where no prejudice need be shown, on appeal defendant must show not only error but prejudice. The court stated "it should be kept in mind that we are dealing not with a favored right such as the right 'to appear and defend, in person and with counsel' [citations] but with a privilege personal to the defendant which will be *deemed to be waived if not asserted by him in timely fashion."* (*Id.* at p. 148.)

It was also the prosecutor in *Batey* v. *Superior Court* (1977) 71 Cal.App.3d 952 [139 Cal.Rptr. 689] who moved for trial continuances.

Over defendant's objections, and based upon the prosecutor being engaged in another trial, the court first granted a 15-day continuance and then a 75-day continuance. Following the denial of his motion to dismiss the defendant sought a writ.

In granting the writ the Court of Appeal found that just being in trial does not constitute good cause to delay other trials. A prosecutor with multiple case assignments must anticipate trial conflicts and make an effort to have another prosecutor be prepared to timely try the case. (71 Cal.App.3d at p. 957.) The state was at fault for failing to do so and hence there was no good cause to grant the second, lengthy continuance.

*People* v. *Johnson* (1980) 26 Cal.3d 557 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255] also found the state at fault and therefore held unexcused the delay of the defendant's trial. Here it was a public defender with a heavy caseload and a chronically congested trial court, that denied the defendant a speedy trial. Absent exceptional circumstances, *Johnson* held, such conditions are not good cause for denying an in-custody defendant a speedy trial.

*Sanchez* v. *Superior Court* (1982) 131 Cal.App.3d 884 [182 Cal.Rptr. 703], relied upon by petitioner, involved defendants jointly charged with burglary. Petitioner's codefendant[4] was represented by the public defender who "advised the court that he was engaged in another criminal trial and was assigned to two other 'must-go' criminal trials immediately thereafter." (*Id.* at p. 887.) The court, over petitioner's objection, granted two continuances totalling twenty-one days.

In holding that the continuances were without good cause *Sanchez* relied upon and applied *People* v. *Johnson.* It stated, "[t]he rule stated in *Johnson* is equally applicable to the present underlying prosecution where delay beyond the statutory period is caused by the unavailability of appointed counsel for a codefendant rather than petitioner's own appointed counsel. The cause of the delay is the same: failure of the state to provide the facilities and personnel needed to implement the right to speedy trial." (131 Cal.App.3d at p. 890.)

*People* v. *Escarcega* (1986) 186 Cal.App.3d 379 [230 Cal.Rptr. 638] is even more a direct application of *Johnson* than is *Sanchez.* Instead of an overburdened public defender, as in *Johnson,* it was court-appointed private counsel whose overburdened calendar deprived the defendant of his statutory speedy trial. In finding this delay, requested by appointed counsel, "bad

---

[4] A third codefendant was severed from the case due to illness.

cause," the court, quoting *Johnson,* stated: " 'Thus the state cannot rely upon the obligations which an appointed counsel owes to other clients to excuse its denial of a speedy trial to the instant defendant' ". (*Id.* at p. 386.)

As in *Sanchez* the People sought refuge in section 1098. In an overly broad response the court remarked, "[t]he preference for a joint trial of jointly charged defendants does not constitute good cause to delay one defendant's trial beyond the time period set forth in Penal Code section 1382, subdivision 2." (186 Cal.App.3d at p. 386, fn. 4.)

Finally, *People* v. *Cooper* (1989) 216 Cal.App.3d 830 [__ Cal. Rptr. __], review granted March 15, 1990 (S013859), indistinguishable from *Sanchez,*[5] found the congested calendar of appointed counsel for a codefendant "bad cause" to deny defendant a speedy trial. The court, properly rejecting the People's section 1098 argument, in loose dictum opined "that neither judicial economy nor the prosecutor's convenience can outweigh a defendant's right to a speedy trial. . . ." (*Id.* at p. 835.)

■ In summary, good cause is *not* shown by a prosecutor's desire for a vacation (*People* v. *Wilson, supra,* 60 Cal.2d 139), a prosecutor's congested calendar (*Batey* v. *Superior Court, supra,* 71 Cal.App.3d 952), and chronically congested courts and overburdened appointed counsel. (*People* v. *Johnson, supra,* 26 Cal.3d 557; *Sanchez* v. *Superior Court, supra,* 131 Cal.App.3d 884; *People* v. *Escarcega, supra,* 186 Cal.App.3d 379; *People* v. *Cooper, supra,* 216 Cal.App.3d 830.)

*Good cause: what constitutes*

■ Although section 1382 prohibits delay without "good cause" it does not define good cause. Instead "[w]hat constitutes good cause for the delay of a criminal trial is a matter that lies within the discretion of the trial court." (*People* v. *Johnson, supra,* 26 Cal.3d 557, 570.) The circumstances that may constitute good cause, and the amount of delay those circumstances may justify, are varied.

For example, all of the following circumstances have been held to constitute good cause: infantile paralysis epidemic (*In re Venable* (1927) 86 Cal.App. 585 [261 P. 731] [trial judge did not set jury trials for 15 days]); prosecution witness unavailable and defense attorney not *immediately* available (*People* v. *Clayton* (1928) 89 Cal.App. 405, 408 [264 P. 1105] [7 days]); defendant held for trial in another county (*People* v. *Burns* (1932) 128

---

[5] The codefendant was represented by private counsel, court-appointed, not the public defender, as in *Sanchez.*

Cal.App. 226 [16 P.2d 1015] [35 days]); prosecutor not ready for trial because he relied on codefendant's statement that he "might" plead guilty (*People* v. *McFarland* (1962) 209 Cal.App.2d 772 [26 Cal.Rptr. 596] [30 days]); defendant's noncooperation with his attorney (*People* v. *Floyd* (1970) 1 Cal.3d 694, 706-707 [83 Cal.Rptr. 608, 464 P.2d 64], disapproved on other ground in *People* v. *Wheeler* (1978) 22 Cal.3d 258, 287, fn. 36 [148 Cal.Rptr. 890, 583 P.2d 748] [56 days]); separate trial of coperpetrator involving same prosecutor, witnesses, and exhibits (*In re Wells* (1971) 20 Cal.App.3d 640, 645 [98 Cal.Rptr. 1], disapproved on other grounds in *People* v. *Wheeler, supra*, 22 Cal.3d 258, 286-287 [23 days]); defendant's failure to appear when case called during the morning; he appeared in the afternoon (*Turner* v. *Municipal Court* (1982) 131 Cal.App.3d 643 [182 Cal.Rptr. 650] [41 days]); *in trial* delay due to trial judge becoming presiding judge and a surge of in-custody, no-waiver cases (*People* v. *Gopal* (1985) 171 Cal.App.3d 524 [217 Cal.Rptr. 487] [2½ months]); People's exercise of Code of Civil Procedure section 170.6 against only available judge (*Bryant* v. *Superior Court* (1986) 186 Cal.App.3d 483, 501 [230 Cal.Rptr. 777] [1 day]); delayed transportation of defendant from state prison and trial preparation by defense attorney (*People* v. *Malone* (1987) 192 Cal.App.3d 1096 [237 Cal.Rptr. 794] [about 3 months]).

Although these cases illustrate, and thus help to define, good cause and also to suggest its elasticity (one day to about three months' delay), they do not resolve two issues central to this petition.

First, we must determine what weight, if any, a trial court, in the exercise of its discretion, may give to the statutory mandate for joint trials. Second, assuming good cause delay, what factors determine its duration.

*Section 1098: its weight*

Petitioner contends that the joint trial mandate of section 1098 is not a counterweight to her speedy trial right. Her interest in a statutory speedy trial, she argues, is independent of and immune from any and all interests embodied in section 1098. Section 1098 interests, she asserts, weigh not even a milligram on a defendant's section 1382 scales.

If this argument were correct we would expect section 1098 interests to be similarly weightless on scales comparable to 1382. They are not. Examples follow.

Raymond Alvarez, under 18 years old and not subject to the death penalty, sought a trial separate from Tony Lara. Alvarez argued he would be prejudiced by a "death qualified jury" if jointly tried with Lara and that

the prosecutor would have an unfair and disproportionate number of jury challenges. The California Supreme Court replied, "[t]he legislative policy in favor of joint trials of jointly charged defendants (Pen. Code, § 1098) is not outweighed by the circumstance that the prosecutor's challenges for conscientious objection to the death penalty may be technically inapplicable to a codefendant immune from that penalty." (*People* v. *Lara* (1967) 67 Cal.2d 365, 394 [62 Cal.Rptr. 586, 432 P.2d 202].)

In *People* v. *Turner* (1984) 37 Cal.3d 302 [208 Cal.Rptr. 196, 690 P.2d 669], overruled on other grounds in *People* v. *Anderson* (1987) 43 Cal.3d 1104, 1115 [240 Cal.Rptr. 585, 742 P.2d 1306], conflicting defenses and multiple-count confusion were the interests which outweighed a joint trial, appellant contended. The Supreme Court disagreed. Justice Kaus observed, "the instant case provided the classic situation for joint trial—defendants charged with common crimes against common victims." (*Id.* at p. 312.)

In *People* v. *Kelly* (1986) 183 Cal.App.3d 1235 [228 Cal.Rptr. 681] appellant urged not only "death qualified jury" prejudice, caused by his joint trial, but also a violation of his privilege against self-incrimination. He maintained that because he was jointly tried with codefendant Keenan the trial court excluded appellant's police recorded statement on *Aranda*[6] grounds, thus compelling appellant to testify. In rejecting his claims the Court of Appeal stated: "This court does realize that in a joint trial of a multiple number of defendants a codefendant may suffer 'associational prejudice.' [Citation.] In light of the strong preference for joint trials (under Pen. Code, § 1098) and the discretion afforded the trial court in severance motions, relief can only be granted when, in a case-by-case analysis, clear evidence showing prejudice is offered." (*Id.* at pp. 1240-1241.)

The interests which Maurice Keenan sought to protect are described by Justice Eagleson: "We assume arguendo, as defendant suggests, that the Stevenson shooting, and certain other evidence presented by Kelly[7] which suggested defendant's violent nature, would have been inadmissible in his separate guilt trial for the Opel murder." (*People* v. *Keenan* (1988) 46 Cal.3d 478, 501 [250 Cal.Rptr. 550, 758 P.2d 1081].) In rejecting appellant's claim that this interest, especially in a capital case, outweighed joint trial interests, the court declared " '[o]ther crimes' evidence which would not be admissible against an accused in his separate trial holds a well-understood potential for prejudice. However, the likelihood of its admission in an otherwise proper joint trial does not alone justify severance." (*Ibid.*)

In *People* v. *Harris* (1989) 47 Cal.3d 1047 [255 Cal.Rptr. 352, 767 P.2d 619] the trial court, in order to honor the joint trial mandate of section

---

[6] *People* v. *Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265].
[7] *People* v. *Kelly, supra*, 183 Cal.App.3d 1235.

1098, employed dual juries. The Supreme Court summarized appellant's claims and its disposition of them as follows: "Defendant claims the use of two juries was distracting, disruptive, and necessarily prejudicial because the jury that convicted him inevitably became aware that during periods when it was not present in the courtroom the jury trying Davison heard evidence inadmissible, but damaging, as to him. We conclude that defendant has failed to establish that the procedure was prejudicial to him. Although no statute sanctions the use of two juries, the procedure affords a practical and reasonable means by which to minimize the inconvenience and not inconsiderable burden on those witnesses who would otherwise have to testify in separate trials, and to conserve judicial resources." (*Id.* at p. 1056.)[8]

In *Richardson* v. *Marsh* (1987) 481 U.S. 200 [95 L.Ed.2d 176, 107 S.Ct. 1702] the defendant claimed her Sixth Amendment right to confront witnesses was denied by admission of her codefendant's confession. Distinguishing *Bruton* v. *United States* (1968) 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620], Justice Scalia, writing for a six-justice majority, rejected her claim. His comments concerning joint trials are instructive.

"One might say, of course, that a certain way of assuring compliance would be to try defendants separately whenever an incriminating statement of one of them is sought to be used. That is not as facile or as just a remedy as might seem. Joint trials play a vital role in the criminal justice system, accounting for almost one-third of federal criminal trials in the past five years. [Citation.] Many joint trials—for example, those involving large conspiracies to import and distribute illegal drugs—involve a dozen or more codefendants. Confessions by one or more of the defendants are commonplace—and indeed the probability of confession increases with the number of participants, since each has reduced assurance that he will be protected by his own silence. It would impair both the efficiency and the fairness of the criminal justice system to require, in all these cases of joint crimes where incriminating statements exist, that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit. Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the

---

[8] See also *People* v. *Wardlow* (1981) 118 Cal.App.3d 375 [173 Cal.Rptr. 500], upholding dual juries.

scandal and inequity of inconsistent verdicts." (481 U.S. at pp. 209-210 [95 L.Ed.2d at p. 187].)

■ As these cases demonstrate, the preference for joint trials encompasses varied and significant interests. So significant, in fact, that they may serve as counterweights to a defendant's right to confront witnesses (*Richardson* v. *Marsh*), his privilege against self-incrimination (*People* v. *Kelly*), his right to exclude prejudicial character evidence (*People* v. *Keenan),* and others (*People* v. *Turner, People* v. *Lara*, and *People* v. *Harris*).

As we next discuss, joint trial interests constitute section 1382 good cause.

*Joint trial and section 1382 good cause*

In *Ferenz* v. *Superior Court* (1942) 53 Cal.App.2d 639 [128 P.2d 48] the Sacramento County grand jury indicted nine defendants for failing to register as members of a subversive organization. All parties agreed to a July 6 trial date. But when two of the defendants were unavailable on that date, being in trial on similar charges in Los Angeles Federal Court, the court granted a prosecution continuance motion, over petitioners' objections, to July 21. When the two codefendants were again unavailable on July 21 the court granted another prosecution continuance, this one for seven days. Petitioners sought a writ claiming speedy trial denial.

In denying the writ the Court of Appeal explained, "The Constitution does not purport to fix a period of time within which a person charged with a crime shall be tried. It merely guarantees the accused a 'speedy and public trial.' While it is true that section 1382 of the Penal Code has been held to be mandatory, that section merely designates sixty days as the maximum time after the finding of the indictment or filing of the information within which the cause shall be tried 'in the absence of a showing of *good cause* for extending that time.' It does not necessarily follow that a defendant who has not been brought to trial within sixty days from the finding of the indictment or the filing of the information shall be entitled to a dismissal of the charge for lack of diligence in the prosecution of the cause." (53 Cal.App.2d at p. 642.)

It concluded that "[i]n the present case we are convinced the prosecution has adequately shown good cause why the trial of this case against the petitioners should reasonably be continued to the 28th day of July, which is only twenty-two days beyond the period designated by section 1382 of the Penal Code." (53 Cal.App.2d) In addition to the unavailability of the two codefendants the court cited witness hardship, trial length (eight to ten weeks), and the large number of witnesses (approximately fifty)—all of

which "would be likely to result in great inconvenience and expense, with the likelihood of a miscarriage of justice." (*Id.* at p. 643.)

In *People* v. *Teale* (1965) 63 Cal.2d 178 [45 Cal.Rptr. 729, 404 P.2d 209], reversed on other grounds in *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065], factually similar to the instant case, Teale and Chapman were scheduled to be jointly tried for murder on March 19. But upon Mrs. Chapman's representation that Teale's public defender had a conflict of interest, since he had formerly represented her, new counsel was appointed for Teale. Apparently some time before March 19, Teale's new attorney moved for a continuance in order to adequately prepare for trial. Chapman objected. The trial was continued for about one month, until April 16.

On appeal Chapman claimed a denial of her section 1382 right to a speedy trial. The Supreme Court's response was succinct: "Where a continuance is granted upon good cause to a codefendant the rights of the other defendants are generally not deemed to have been prejudiced. (*People* v. *McFarland,* 209 Cal.App.2d 772; *Ferenz* v. *Superior Court,* 53 Cal.App.2d 639.)" (*People* v. *Teale, supra,* at p. 186.)

Most pertinent to the present case is *Hollis* v. *Superior Court* (1985) 165 Cal.App.3d 642 [211 Cal.Rptr. 649]. Four defendants were jointly charged with murder. Three moved for a continuance forty days beyond section 1382 limits in order to adequately prepare for trial. Petitioner objected. The motion was granted and petitioner timely moved to dismiss. Upon denial he sought a writ.

Unlike *Ferenz, Hollis* does not rely on witness hardship, trial length, large number of witnesses or any other discrete factor[9] in upholding the trial court's determination of good cause. It merely notes the potential conflict between sections 1382 and 1098, distinguishes *Sanchez, supra,* 131 Cal.App.3d 884, as we have, and relies on *People* v. *Teale* for the proposition that "[w]here a continuance is granted to a codefendant upon good cause, the rights of other jointly charged defendants are generally deemed not to have been prejudiced." (*Id.* at p. 646.)

Both in her petition and during oral argument petitioner attempted to distinguish *Hollis* on the ground that she requested a severance but Hollis did not.

This would-be distinction is based upon the following language in *Hollis:* "Petitioner objected to the continuance and demanded trial as originally

---

[9] The decision does state that the *trial court* noted "the charges were very substantial and the case complex." (165 Cal.App.3d at p. 646.)

scheduled. When the court raised the possibility of trying petitioner separately, counsel for petitioner indicated that a separate trial was of no tactical advantage to petitioner and disavowed any intention to force a severance. Thereupon, the court continued the case. . . ." (165 Cal.App.3d at p. 644.) The only other pertinent reference is the court's concluding comment that "the [trial] court was, perforce, also cognizant that petitioner disclaimed any interest in severance and, more importantly, had expressed doubt that a severance would work to his advantage." (*Id.* at pp. 646-647.)

We find no distinction between *Hollis* and the instant case. First, we understand counsel's remarks, as the *Hollis* opinion extrapolates them, to only mean that his objection to trial delay was sincere and not a ploy to obtain a separate trial. Thus his emphasis that "a separate trial was of no tactical advantage" to his client. Second, we note that counsel for Hollis did not *object* to a severance. Third, counsel for Hollis did not contend that a severance would prejudice or in any way be tactically *disadvantageous* to his client.

Thus, when distilled, the *Hollis* severance language amounts to only this: Hollis did not make a severance motion. Petitioner cites no authority for the proposition, and we know of none, that failure to move for a severance degrades a defendant's right to a speedy trial.

■■ ■■■■ We therefore conclude that if the precipitating cause for trial delay is justifiable,[10] such as codefendants' need to adequately prepare for trial, then the section 1098 joint trial mandate constitutes good cause to delay the trial of an objecting codefendant. Were the extent of delay but twenty-two days (*Ferenz* v. *Superior Court*), about a month (*People* v. *Teale*), forty days (*Hollis* v. *Superior Court*), two and one-half months (cf. *People* v. *Gopal, supra*, 171 Cal.App.3d 524), or even three months (cf. *People* v. *Malone, supra*, 192 Cal.App.3d 1096) we would end the discussion here. But the instant delay is approximately six months.[11] Thus, we must consider whether not just *a* delay, but a delay of six months is with good cause.

*Six-month delay: good cause*

We begin with the obvious. None of the cases which have found good cause delay determined or suggested that a longer delay would have been

---

[10] "[A] criminal defendant may not be deprived of a speedy trial because the prosecution— or the defense—is lazy or indifferent, or because the prosecution seeks to harass the defendant rather than bring him fairly to justice. . . ." (*People* v. *Floyd, supra*, 1 Cal.3d 694, 707.)

[11] Petitioner agreed to a January 8, 1990, trial. A section 1382 10-day grace period, the January 8 date being beyond 60 days, extended the permissible trial date to January 18. The continuance to July 23 is six months and five days.

without good cause. *Ferenz* condoned 22 days; it did not condemn 23. *Teale* approved about a month; it did not disapprove a month and a day. *Hollis* upheld 40 days; it did not deny 41.

We have found no magic calipers marking the exact reach of good cause delay. In speaking of a defendant's right to a speedy trial the United States Supreme Court has said, "[i]t is . . . impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate." (*Barker* v. *Wingo* (1972) 407 U.S. 514, 521 [33 L.Ed.2d 101, 112, 92 S.Ct. 2182].)

Although imprecise, the measure of good cause delay has guidelines. *Barker* v. *Wingo* identified four such guidelines or factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." (407 U.S. at p. 530 [33 L.Ed.2d at p. 117].)

Before applying these and other appropriate factors to the instant case, we consider their application in three other cases.

A 20-month trial delay was involved in *People* v. *Powell* (1974) 40 Cal.App.3d 107 [115 Cal.Rptr. 109]. The causes for the delay included challenges to the jury venire, challenges to four trial judges, discharge of reinstated counsel (Irving Kanarek) for the codefendant, and "myriad procedural maneuvers" by the defense. (*Id.* at p. 151.) They also included trial joinder (with codefendant Smith).

In holding that the trial court properly denied severance motions and motions for dismissal the court stated, "Joint trials are favored and should not be disavowed on the basis of hindsight only. [Citation.] Statutory policy favors joint trial. (Pen. Code, § 1098.) The circumstances of this case were particularly suited for a joint trial. Appellants were present during all of the activity that constituted the preliminary acts and the elements of the offense charged. . . ."

"We do not find that the delay was inordinate in light of the complexity of the case, the gravity of the charge and the reasons for the continuances." (407 U.S. at p. 152.)

A 19-month trial delay was involved in *United States* v. *Ewell* (1966) 383 U.S. 116 [15 L.Ed.2d 627, 86 S.Ct. 773]. Appellants were originally charged with and convicted of one count of narcotic sale. After appellants had their convictions vacated (the indictment had failed to name the purchaser), the government not only recharged them with the original crime but added

another related offense[12] which appellants challenged on speedy trial grounds. From original indictment until the district court dismissed the second indictment, appellants had been in custody 19 months without having been tried for the added charge.

The United States Supreme Court reversed the dismissal and held there was no denial of a speedy trial. The court stated, "[w]e cannot agree that the passage of 19 months between the original arrests and the hearings on the later indictments itself demonstrates a violation of the Sixth Amendment's guarantee of a speedy trial. This guaranty is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself. However, in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view that 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.'" (383 U.S. at p. 120 [15 L.Ed.2d at pp. 630-631].)

A 20-month delay[13] was involved in *Barker* v. *Wingo, supra,* 407 U.S. 514. In a mirror image of the instant case, the delay was caused by appellant's murder coperpetrator being tried *separately* and first. Six times. Mistrials and reversed convictions consumed five years. Only then was appellant, who had spent 10 months in custody, brought to trial, convicted, and sentenced to life imprisonment.

In affirming the conviction, and denying Barker's speedy trial claim, the Supreme Court balanced four factors (length of delay, reason for delay, defendant's assertion of his right, and prejudice to the defendant) and found the scales tipped against petitioner.

The court's assessment did not devalue the speedy trial right. **(8)** But it did recognize the difference between this and other rights, a "generic[ ] differen[ce] from any of the other rights enshrined in the Constitution for the protection of the accused." (407 U.S. at p. 519 [33 L.Ed.2d at p. 110].) Unlike many other rights "there is a societal interest in providing a speedy

---

[12] Two offenses were added but only one was pursued.
[13] The actual delay from petitioner's arrest to his trial was over five years. However, petitioner only objected to 20 months of this period.

trial which exists separate from, and at times in opposition to, the interests of the accused." (*Ibid.* [33 L.Ed.2d at pp. 110-111].)

California recognizes this separate and at times opposed societal interest. Section 1050, subdivision (a), describes it: "The welfare of the people of the State of California requires that all proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible time. To this end the Legislature finds that the criminal courts are becoming increasingly congested with resulting adverse consequences to the welfare of the people and the defendant. Excessive continuances contribute substantially to this congestion and cause substantial hardship to victims and other witnesses. Continuances also lead to longer periods of presentence confinement for those defendants in custody and the concomitant overcrowding and increased expenses of local jails. It is therefore recognized that the people, the defendant, and the victims and other witnesses have the right to an expeditious disposition, and to that end it shall be the duty of all courts and judicial officers and of all counsel, both for the prosecution and the defense, to expedite these proceedings to the greatest degree that is consistent with the ends of justice. In accordance with this policy, criminal cases shall be given precedence over, and set for trial and heard without regard to the pendency of, any civil matters or proceedings."

In determining whether the trial court abused its discretion in ordering approximately a six-month trial continuance we weigh the interests identified in section 1050, the interests served by section 1098, and the interests protected by the right to a speedy trial.

In exercising its discretion the trial court stated: "It's clearly a very complex[ ] case and it seems to me that the period asked for by the other two defendants is very reasonable considering the complexity of the case and what needs to be done. [¶] So I will find that seven [*sic*] months is an appropriate continuance based upon the preparation that needs to be done. [¶] Although I recognize that you are very anxious to go to trial Mr. Shohat [petitioner's counsel] and the reasons for it as detailed to me in camera, I find that that is outweighed by the need for preparation by the co-defendants and the economy of a joint trial and I think that the prejudice that you lay out is speculative."

 We hold that, considering the following factors, all supported by the record before the trial court, petitioner has failed to establish an abuse of trial court discretion.

*Length of delay.* " 'The right of a speedy trial is necessarily relative.' " (*Barker* v. *Wingo, supra,* 407 U.S. at p. 522 [33 L.Ed.2d at

p. 112].) Here the six-month trial delay must be considered against the six-year murder investigation, the over fifteen-month period from petitioner's arrest to the January 8, 1990, trial date she consented to, the over two-month preliminary hearing, and the possibility of a trial lasting six months or longer.

*Seriousness of charges.* "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." (*Barker* v. *Wingo, supra,* 407 U.S. at p. 531 [33 L.Ed.2d at p. 117].) Petitioner and her codefendants were charged with the ultimate serious charge: capital murder. (Compare *Turner* v. *Municipal Court, supra,* 131 Cal.App.3d 643 [misdemeanor charge—41-day delay].)

*Complexity of case.* No evidence contradicts the trial court's express finding that this is "a very complex[ ] case." It is supported by the 4,565 pages of preliminary hearing transcript which the trial court read, the 15,000 pages of discovery and over 14 months[14] for codefendants to adequately prepare for trial.

*Prejudice to petitioner.* No evidence has been lost and no witnesses have become unavailable to petitioner. Those prospects were expressly found to be "speculative" by the trial court.

*Reason for delay.* Codefendants established that unless granted a six-month continuance they would be denied their Sixth Amendment right to the effective assistance of counsel. (Compare *Barker* v. *Wingo, supra,* 407 U.S. 514, 533-534 [33 L.Ed.2d at p. 119]: a seven-month delay caused by the illness of *a witness,* the investigating officer and ex-sheriff is "a strong excuse.") No part of the delay is attributable to the People who announced ready for trial on January 8, 1990. There is no suggestion either the court or the state is at fault for the delay.

*Witness hardship.* Twenty-six witnesses testified at petitioner's preliminary hearing; some for the second time.[15] Some will testify a third time at the trial of the severed counts II (the murder of June Mincher) and III (attempted murder of Christian Pierce). Probably all, and no doubt additional witnesses, will testify at the Radin murder trial. For some, if there is but one such trial, it will be their fourth time. If there are two Radin murder trials some witnesses will testify five times. If those two Radin murder trials require penalty trials then some witnesses might testify at least seven

---

[14] The preliminary hearing began May 12, 1989, and trial is set for July 23, 1990.

[15] Superior Court Judge David M. Horowitz was the magistrate at the earlier related preliminary hearing.

times.[16] Such heroic ordeals cannot be expected of ordinary citizens. Prescribing such obstacles must certainly discourage persons already involved as witnesses and soon dissuade others from ever becoming involved. The administration of justice cannot long survive such consequences.

*Burden on the courts.* "[M]ultiple trials involving a single set of facts . . . place needless burdens on defendants, law enforcement officials, and courts." (*United States* v. *Lovasco* (1977) 431 U.S. 783, 793 [52 L.Ed.2d 752, 761, 97 S.Ct. 2044].)

*Additional observations: practical benefits to petitioner; a severance order*

Unlike the denial of a federal speedy trial right which entitles a defendant to a dismissal with prejudice (*Strunk* v. *United States* (1973) 412 U.S. 434 [37 L.Ed.2d 56, 93 S.Ct. 2260]), a section 1382 denial may result in a second (§ 1387) or even third (§ 1387.1) prosecution. Thus, to grant the writ and order dismissal would gain petitioner neither freedom nor a more speedy trial. If on March 23 the instant information were dismissed, and a new felony complaint filed, petitioner's preliminary examination need not commence before 10 days following arraignment (§ 859b). If that examination lasted only half as long as her first examination it would not end before May 1. An information need not be filed until May 16 (§ 1382). Then, assuming the most unlikely and expedited of all scenarios, petitioner would be entitled to a July 16 trial date, but one week earlier than the present July 23 trial date.

If, of course, petitioner were to begin her trial before July 23—putting aside the inconvenience to witnesses and drain on judicial resources caused by a second preliminary examination for her—then codefendants Mentzer and Marti could not be tried on July 23. (*In re Wells, supra,* 20 Cal.App.3d 640, 645: "It is obvious that both trials could not be held at the same time, as they involved the same prosecutor . . . witnesses and evidence.") Thus to validate petitioner's speedy trial claim would not significantly benefit her, would likely delay her codefendants' trial, and if so, likely instigate their denial of speedy trial claims.

Such a scenario violates all common sense, is not legally required, and we decline to author it.

---

[16] "It would impair both the efficiency and the fairness of the criminal justice system to require, in all these cases of joint crimes . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying. . . ." (*Richardson* v. *Marsh, supra,* 481 U.S. 200, 209-210 [95 L.Ed.2d 176, 187].)

Although a severance of petitioner's trial has not been sought nor briefed,[17] at oral argument both parties agreed this court had authority to order severance, and counsel for petitioner stated he would not complain if we did order it.

■ As we have explained, the delay being for good cause, there is no reason to order severance. There are reasons not to.

The benefit to petitioner *might* be a two-month speedier trial. At oral argument her counsel represented that he had "two short trials in Florida" and would be available in early May.

The detriments to ordering a severance have been discussed: forcing witnesses to repeatedly testify, delaying the trial of codefendants, draining judicial resources, increasing prosecution burdens, and multiplying trial confusion.

Additionally, to order a severance is to unwisely denigrate trial court discretion. On this record it cannot fairly be said that a three- or four-month delay was within trial court discretion but a five- or six-month delay outside its discretion.

### DISPOSITION

The petition for a writ of mandate and/or prohibition is denied.[18]

Lillie, P. J., concurred.

**JOHNSON, J.,** Concurring and Dissenting.—I concur in the majority's conclusion that good cause existed to continue petitioner Karen DeLayne Greenberger's (petitioner) trial. However, unlike the majority, I would conclude the good cause did not extend to permit the trial court to continue petitioner's trial for an additional half-year thereby forcing her to remain in custody without the benefit of either bail or a speedy adjudication of the allegations against her for almost two years.

I begin my discussion with an explanation of why I believe good cause existed here. I do so because I believe the majority's discussion of this issue

---

[17] Both parties agreed that the denial of petitioner's severance motion was not before this court.

[18] We have held that, on this record, trial delay to July 23, 1990, is with good cause. We have not held and do not imply that additional delay would be justified. Moreover, we recommend to the trial court the advisability of communicating to all counsel, well before July 23, that, absent compelling circumstances, additional trial preparation time will not be granted (§ 1050).

fails to adequately explain the competing interests a court must weigh when a codefendant seeks to continue a trial date beyond the statutory period.

## THE STATUTORY PREFERENCE FOR JOINT TRIALS, UNDER CERTAIN CIRCUMSTANCES, MAY CONSTITUTE GOOD CAUSE TO CONTINUE A TRIAL BEYOND THE STATUTORY PERIOD.

Our state Constitution guarantees criminal defendants the right to a speedy trial. (Cal.Const., art. I, § 15.) The purpose underlying this right to a speedy trial is "to protect those accused of crime against possible delay, caused either by willful oppression, or the neglect of the state or its officers." (*In re Begerow* (1901) 133 Cal. 349, 355 [65 P. 828]; *People* v. *Johnson* (1980) 26 Cal.3d 557, 571 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]; *Sanchez* v. *Superior Court* (1982) 131 Cal.App.3d 884, 890 [182 Cal.Rptr. 703].)

Penal Code section 1382 interprets this constitutional right by providing a defendant accused of a felony is entitled to dismissal of the charges against him if he is not brought to trial within 60 days of the filing of the information or, if the defendant previously consented to a trial date beyond the 60-day period, within 10 days from the date set for trial, unless there is a showing of good cause. (Pen. Code, § 1382, subd. (b); *Rhinehart* v. *Municipal Court* (1984) 35 Cal.3d 772, 776 [200 Cal.Rptr. 916, 677 P.2d 1206]; *People* v. *Johnson, supra*, 26 Cal.3d at p. 561.) If a defendant raises the issue of a speedy trial before the trial has commenced, the defendant will be presumed to have been prejudiced by the lack of a speedy trial unless the prosecution has established good cause. (*People* v. *Clark* (1965) 62 Cal.2d 870, 882 [44 Cal.Rptr. 784, 402 P.2d 856].)

What constitutes good cause is a matter within the trial court's discretion. (*People* v. *Johnson, supra*, 26 Cal.3d at p. 570.) Although good cause has not been defined, examples of good cause include delay caused by the defendant's conduct, delay for the defendant's benefit, delay arising from unforeseen circumstances including the unavailability of a witness, of a codefendant, of a judge or of defense counsel. (See *People* v. *Johnson, supra*, 26 Cal.3d at p. 570 and fns. 13-15; *Townsend* v. *Superior Court* (1975) 15 Cal.3d 774, 783-784 [126 Cal.Rptr. 251, 543 P.2d 619]; *Batey* v. *Superior Court* (1977) 71 Cal.App.3d 952, 956-957 [139 Cal.Rptr. 689].) However, good cause does not arise if the delay is attributable to the prosecution or the lack of judicial resources. (*People* v. *Johnson, supra*, 26 Cal.3d at p. 571; *Arreola* v. *Municipal Court* (1983) 139 Cal.App.3d 108, 113 [188 Cal.Rptr. 529].)

Two of petitioner's codefendants presented evidence in camera to the trial court establishing their need to continue the trial an additional seven

months in order to properly prepare. Based upon this evidence, and what the trial court concluded was merely speculation concerning any prejudice to petitioner, the trial was continued until July 1990.

Petitioner, while conceding good cause existed to continue her codefendants' trial, argues the preference for trying her jointly with the codefendants did not constitute good cause to continue her trial. This is incorrect.

Section 1098 provides in part: "When two or more defendants are jointly charged with any public offense, whether felony or misdemeanor, they must be tried jointly, unless the court order separate trials."

This statutory preference is not absolute. When the mandate for joint trials conflicts with the defendant's right to a speedy trial, a trial court must exercise its discretion to determine which policy will prevail based upon its evaluation of the various policy and pragmatic considerations. (*Sanchez* v. *Superior Court, supra*, 131 Cal.App.3d at p. 891; see *Hollis* v. *Superior Court* (1985) 165 Cal.App.3d 642, 646-647 [211 Cal.Rptr. 649]; *People* v. *Powell* (1974) 40 Cal.App.3d 107, 152 [115 Cal.Rptr. 109].) "Thus, neither a defendant's constitutional right to trial within the 60-day period nor the mandate for joint trial are absolute, but are subject to the discretion of the trial court in evaluation of conflicting policy and pragmatic considerations." (*Sanchez* v. *Superior Court, supra*, 131 Cal.App.3d at p. 891.)[1]

A trial court abuses its discretion in permitting the preference for joint trials to prevail where "the insistence on joint trial was not in good faith, or that it was solely for the purpose of obtaining an otherwise illegal delay, to take unfair advantage of the defendants, or was not reasonably predicated upon the purpose and intent of the statute which grants the right to try the defendants jointly." (*People* v. *Clark, supra*, 62 Cal.2d at p. 883.)

In *Ferenz* v. *Superior Court* (1942) 53 Cal.App.2d 639 [128 P.2d 48], the Court of Appeal held the trial court properly continued the defendant's trial beyond section 1382's time period so he could be jointly tried with his codefendants. In finding good cause to continue the trial beyond the

---

[1] In dictum, the court in *People* v. *Escarcega* (1986) 186 Cal.App.3d 379, 386, footnote 4 [230 Cal.Rptr. 638], citing *Sanchez* v. *Superior Court, supra,* stated "[t]he preference for a joint trial of jointly charged defendants does not constitute good cause to delay one defendant's trial beyond the time period set forth in Penal Code section 1382, subdivision 2." This is incorrect for two reasons. First, as we discussed above, the court in *Sanchez* v. *Superior Court, supra,* 131 Cal.App.3d at page 891, recognized the preference for joint trials may, under the proper circumstances, outweigh a defendant's right to a speedy trial. The court went on to hold that under the facts presented there, the policy favoring joint trials did not prevail. (*Ibid.*) Second, the Supreme Court has held the policy favoring a joint trial may constitute good cause. (*People* v. *Clark, supra*, 62 Cal.2d at p. 883.)

statutory period, the court noted a joint trial was preferable because, inter alia, of the length of the trial, the necessity of procuring a large number of witnesses, and the inconvenience and expense which would result from a severance. (*Id.* at p. 643.)

Here, the trial on the Radin murder has been estimated to take three months with jury voir dire to take up to an additional two months. The preliminary hearing transcript, which was reviewed by the trial court, indicates the prosecution called approximately 21 witnesses, including witnesses to which their testimony was stipulated, to testify concerning the common counts against all 3 defendants. One may fairly assume a similar number will be called at trial. Severance is likely to result in many of these witnesses being required to testify twice. Under these facts, there is a strong policy preference to try the defendants jointly.[2]

Further, unlike those cases where a defendant or codefendant moved for a continuance because the court-appointed counsel had calendaring conflicts, the codefendants here sought their continuance because of their need to conduct further investigations and to prepare for trial. (Compare *People v. Cooper* (1989) 216 Cal.App.3d 830, 834 [265 Cal.Rptr. 58]; *People v. Escarcega, supra,* 186 Cal.App.3d at p. 386; *Sanchez v. Superior Court, supra,* 131 Cal.App.3d at p. 890.) Thus, the need for a continuance cannot be attributed to the oppression or neglect of the court or the state.

In this regard, our facts are most similar to those in *Hollis v. Superior Court, supra,* 165 Cal.App.3d 642. There, a codefendant's appointed counsel moved to continue the trial because he required additional time to adequately prepare. (*Id.* at p. 646.) As the court noted, "[c]ounsel's need for more than 60 days to complete preparations for a murder defense is certainly not uncommon and, standing alone, does not implicate the state in a failure to afford adequate defense resources." (*Id.* at p. 646.)[3] The court

---

[2] The People filed a declaration with their return setting forth several reasons why the defendants should be tried jointly. Among these reasons, the People claim many of their witnesses already must testify twice because the court severed counts concerning the Mincher murder from the trial on the Radin murder. The People also claim they intend to call more witnesses than were called to testify at the preliminary hearing. The majority has apparently relied upon this declaration when they remarked on the number of times witnesses may be called if the severance was permitted. This is improper. These statements were not before the trial court and, therefore, could not have been considered when the trial court exercised its discretion in finding good cause. (See *Sequoia Pine Mills, Inc. v. Superior Court* (1968) 258 Cal.App.2d 65, 69-70 [65 Cal.Rptr. 353].)

[3] *Hollis* is not identical in all respects with our case since in *Hollis,* the defendant disclaimed any interest in severing his trial from his codefendants. (*Id.* at pp. 646-647.) This factual difference does not affect my conclusion that the state is not implicated in the codefendants' need for further preparation.

went on to hold there was good cause to continue the trial as to all the defendants.

It is clear from the record, the trial court balanced the various factors favoring a joint trial against petitioner's right to be brought to trial within the statutory period when granting the motion to continue. These factors include the length and complexity of the trial, the number of witnesses to be called, and the codefendants' need to adequately prepare for trial. Under these facts, I cannot say the trial court abused its discretion in concluding good cause existed to continue the trial beyond the January 8 trial date.

However, as I explain below, although the trial court had the discretion to continue the trial, I would hold the good cause found here did not warrant a six-month continuance.

## THE TRIAL COURT ABUSED ITS DISCRETION IN CONTINUING PETITIONER'S TRIAL FOR OVER SIX MONTHS.

My review of the relevant authorities indicates the longest continuance permitted under similar circumstances was 40 days from the trial date. (*Hollis* v. *Superior Court, supra,* 165 Cal.App.3d at p. 644; see *Ferenz* v. *Superior Court, supra,* 53 Cal.App.3d at p. 641. [continuance of 22 days beyond statutory period held permissible]; *People* v. *Lanigan* (1943) 22 Cal.2d 569, 579-580 [140 P.2d 24, 148 A.L.R. 176] [good cause to continuance of approximately 5 weeks beyond the statutory period]; *Batey* v. *Superior Court, supra,* 71 Cal.App.3d at pp. 956-957 [good cause found for continuance of 3 days beyond the statutory period]; compare *People* v. *Johnson, supra,* 26 Cal.3d at p. 565 [no good cause for continuances of approximately 12 weeks beyond the statutory period]; *People* v. *Cooper, supra,* 216 Cal.App.3d at p. 833 [no good cause for continuance of 1 week beyond statutory period]; *People* v. *Escarcega, supra,* 186 Cal.App.3d at p. 386 [no good cause for continuance of approximately 2½ weeks beyond the statutory period]; *Sanchez* v. *Superior Court, supra,* 131 Cal.App.3d at pp. 887-888 [no good cause for continuance of approximately 20 days beyond the statutory period].) Our research discloses no case even roughly analogous to ours where a longer continuance was permitted.

The only case which, at first blush, arguably could justify the prolonged continuance here is *People* v. *Powell, supra,* 40 Cal.App.3d 107, a case relied upon by the majority. There, the statutory period to bring the defendant to trial ended on October 31, 1967, and the defendant was not brought to trial until April 7, 1969. (*Id.* at p. 145.) Although the defendant's claim that he was denied a speedy trial was "rooted in his assumption that he had a right to proceed in propria persona. . . ," and resulted largely from his court-

appointed counsel's need for additional time to prepare for trial, an unknown part of the delay was attributable to the presentation, consideration and ruling on the defendant's motions to sever his trial from the codefendant. (*Id.* at pp. 147, 151, 152.) However, a careful review of the procedural facts illustrates any delay attributed to the decision to try the defendants jointly was less than the delay here.

In *Powell,* the trials of the two defendants were ultimately severed sometime prior to March 27, 1968, so any delay beyond this date is not attributable to the preference for joint trials. (40 Cal.App.3d at pp. 149-150.) Prior to this date, the trial court granted continuances of approximately two and one-half months to permit the defendant's attorney to prepare. (*Id.* at pp. 148-149.) The trial was continued for an additional month because of legitimate conflicts with appointed counsel's calendar or pretrial motions. (*Id.* at p. 148.) Thus, at most, any delay attributable to the joint trial could not be more than three months, far less than the continuance granted here.

In our case, the section 1382 statutory period expired on January 18, 1990, 10 days following the consented trial date. The trial court continued the trial for over half a year to July 23. I find this to be excessive.

The disadvantages experienced by an incarcerated defendant who cannot obtain pretrial release are serious. As the U.S. Supreme Court noted, "[t]he time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. . . . Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious. It is especially unfortunate to impose them on those persons who are ultimately found to be innocent." (*Barker* v. *Wingo* (1972) 407 U.S. 514, 532-533 [33 L.Ed.2d 101, 118, 92 S.Ct. 2182], fn. omitted; accord *People* v. *Johnson, supra,* 26 Cal.3d at p. 569, fn. 11.)

Here, Greenberger has already suffered from 16 months of pretrial detention. To permit the detention to continue until July of this year without being brought to trial would be a denial of her right to a speedy trial.

The majority cites two federal cases to support their conclusion that a six-month delay is permissible. These cases are, of course, inapposite since they only construe the federal right to a speedy trial and we are concerned with a separate state constitutional right which, through Penal Code section 1382, has already set an initial 60-day period as the maximum time within which a defendant must be brought to trial.

Moreover, neither case resembles the facts here. In *United States* v. *Ewell* (1966) 383 U.S. 116 [15 L.Ed.2d 627, 86 S.Ct. 773], the two defendants pleaded guilty less than one week after they were charged. (*Id.* at p. 118 [15 L.Ed.2d at pp. 629-630].) They were sentenced to prison. Approximately seven months later the Court of Appeals held the statute under which the defendants were charged was defective if certain procedural requirements were not met. Based upon this case, the defendants successfully moved to vacate their convictions.

The defendants were reindicted in March and June of 1964. (383 U.S. at p. 119 [15 L.Ed.2d at p. 630].) They successfully moved to dismiss the indictments claiming they were denied their right to a speedy trial. The Supreme Court reversed noting the defendants were promptly indicted and convicted after their initial arrests in 1962 and immediately rearrested and reindicted in due course later. (*Id.* at pp. 120-121 [15 L.Ed.2d at p. 631].) The Supreme Court held the substantial interval between the original and subsequent indictments did not violate the federal right to a speedy trial. (*Id.* at p. 121 [15 L.Ed.2d at p. 631].)

*Barker* v. *Wingo, supra,* 407 U.S. 514, is equally inapposite. As the U.S. Supreme Court recognized in finding the defendant was not denied the right to a speedy trial, there were two factors which militated against dismissal. First, the defendant suffered little prejudice since he was able to make bail and, thus, was only incarcerated prior to trial for 10 months. (*Id.* at p. 534 [33 L.Ed.2d at p. 119].) In contrast here, petitioner has already been in custody for 16 months and, with the denial of this petition, will remain in custody without a trial for an additional 4 months.

Second, the defendant in *Barker* did not want a speedy trial. (407 U.S. 514, 534 [33 L.Ed.2d at p. 119].) The defendant never objected to any of the continuances sought by the prosecution, thereby attempting to take advantage of the delay by later arguing denial of a speedy trial. (*Id.* at p. 535 [33 L.Ed.2d at p. 119].) Here, petitioner has adamantly sought a trial commencing January 8, 1990.

The majority claims there is no magical calipers by which to measure when a defendant is denied a speedy trial. Yet it strongly suggests both to the parties and to the trial court that any delay beyond the July 23 date may violate petitioner's right to a speedy trial. I fail to understand how the majority is able to conclude the outside limit for continuing the trial is six months but not one year or ten years. Under its analysis, there appears to be no outside limit. Nonetheless, even the majority is willing to admit such a limit exists.

I would conclude that limit is much smaller in light of the reasons for continuing the trial. Based upon those cases where continuances involving

similar circumstances have been upheld, I would hold the trial court properly could have continued the trial for as long as 60 days. Since any further delay that has taken place thus far in this case is attributable to the filing of and deliberations on the extraordinary writ petition, I would hold dismissal is not required provided petitioner's action is severed and trial is commenced no later than April 12, 1990. (Cf. *Muller* v. *Justice's Court* (1954) 129 Cal.App.2d 570, 572 [277 P.2d 866]; *Matthews* v. *Superior Court* (1973) 35 Cal.App.3d 589, 595 [110 Cal.Rptr. 843].)[4]

The majority claims a severance would "only" benefit petitioner two months while it would drain resources and force witnesses to testify more than once.[5] (Actually petitioner's trial would start over three months earlier were she allowed a severance so the benefit is three months not two.) I hasten to point out the time that would be saved by severing Petitioner's trial exceeds the 60 days California law sets as the outside constitutional limit within which a defendant must be brought to trial. So 60 days, or in this case 103 days, is a substantial period of time in the eyes of the California Constitution. To put it another way, what the majority is *adding* to petitioner's delay is over one and one-half times the sixty days California law initially allotted the prosecution to bring her to trial in the first place. There is no way to minimize such a constitutionally significant burden without trivializing the constitutional right itself.

The majority's argument ignores the simple fact that a defendant is guaranteed a right to a speedy trial under our state Constitution and we may not wholly ignore this right simply to save a few dollars or avoid inconveniencing potential witnesses. As the United States Supreme Court observed over 20 years ago, "[T]he short and perhaps the best answer to any objection based upon expense was given by the Supreme Court of Wisconsin . . . . '*We will not put a price tag upon constitutional rights.*' (Citation omitted.)" (*Smith* v. *Hooey* (1969) 393 U.S. 374, 380, fn. 11 [21 L.Ed.2d 607, 613, 89 S.Ct. 575], italics added.) Yet this is exactly what the majority does in the instant case. It sacrifices petitioner's constitutional rights on the altar of cost and convenience.

As I remarked previously, by denying this petition the majority will force petitioner into a total of 20 months of pretrial incarceration before her guilt or innocence may be determined. The majority is sanguine with this result; I

---

[4] At oral argument, both parties agreed this court was empowered to sever petitioner's trial rather than either denying the petition or ordering the trial court to dismiss the information.

[5] Petitioner's counsel stated at oral argument that he could and would be ready to try the case within three weeks after any severance this court should grant, that is, by mid-April. The prosecution had indicated it was ready to start the trial as early as January 1990.

am not. Justice is not served when it is so cavalierly delayed. I would grant the petition and order a severance of petitioner's trial.

Petitioner's application for review by the Supreme Court was denied July 27, 1990. Mosk, J., was of the opinion that the application should be granted.