[No. F006026. Fifth Dist. June 19, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
PATRICK MALONE, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication
with the exception of parts IV through XII.

---

---

**COUNSEL**

Eric L. Henrikson, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and George M. Hendrickson, Deputy Attorney General, for Plaintiff and Respondent.

---

**OPINION**

**PETTITT, J.*** —

I

In November of 1982, appellant Patrick Malone was convicted of one count of attempted murder (Pen. Code, §§ 187, 664),[1] two counts of assault by force likely to produce great bodily injury (§ 245, subd. (a)), one count each of kidnapping (§ 207), possession of a silencer (§ 12520), and the unlawful taking and driving of a vehicle (Veh. Code, § 10851). A number of enhancements also were found to be true.

On July 31, 1984, this court reversed the above conviction due to error under *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1] (Crim. No. F001872). A remittitur ultimately was filed on October 2, 1984.

Appellant entered a no-contest plea on February 28, 1985, to one count of assault, and one count of kidnapping. Appellant also pleaded no contest to the use of a firearm (§ 12022.5) and having suffered a prior conviction (§ 667.5, subd. (b)). On April 10, 1985, the plea bargain was vacated by the trial court.

---

* Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

[1] All statutory references are to the Penal Code unless otherwise indicated.

A jury trial ultimately commenced on June 25, 1985. On July 3, 1985, the jury returned verdicts of guilty of attempted murder while using a firearm and causing great bodily injury, assault while using a firearm and causing great bodily injury, attempted kidnapping, hit-and-run driving, possession of a silencer, and the unlawful taking of a vehicle. The court determined the allegations regarding prior prison terms to be true.

On July 31, 1985, appellant was sentenced to a total term of 17 years 8 months. A timely notice of appeal was filed on that same day.

## II

### FACTS

On April 2, 1982, a man identifying himself as Mr. Timmons phoned James Churan, a Merced businessman. Timmons indicated he wanted to purchase a vacuum cleaner. Timmons stated he had Churan's home address and wanted to meet him there. Churan declined to meet Timmons at home and arranged instead to meet him at a parking lot where Timmons claimed to be unloading a truck. Timmons described himself as a bearded man who would be carrying an attache case.

When Churan arrived at the appointed place, he saw a man who fit the description. The man was identified to be appellant. According to Churan, appellant was wearing rubber gloves and was carrying an attache case.

After picking up appellant, Churan started to drive out of the parking lot. Churan testified that at this point, appellant reached into his attache case and withdrew an automatic pistol with a silencer. Appellant pointed the gun at Churan and said, "Jim, if you don't do exactly what I tell you, I'm going to blow your head off." Churan reached for the gun which fired injuring Churan in the right hand. A struggle ensued. Churan let go of the gun after appellant screamed and again pointed the gun at Churan.

Appellant instructed Churan to drive onto a road where the grass was taller than the car. Churan testified he felt he would be in a great deal of danger and therefore turned in another direction. Churan again grabbed the gun and this time was shot in the left wrist. During the struggle, Churan was able to press the barrel of the gun against appellant's chest while maneuvering his way out of the car. Churan ran into a nearby Grand Auto store, and instructed the employees in the store to call the police and give them a description of his car.

Churan's car next was seen by his wife in the vicinity of their house. Churan's wife, who had started to drive to the Grand Auto store after

receiving a phone call, followed the car down the street where they lived. About the time the car reached the end of the street, Mrs. Churan saw police cars and heard sirens. These police cars ultimately chased the car.

A car chase ensued with exchanges of gunfire. After officers lost the car around a curve, the car was found off a road. Appellant was lying on the front seat with blood on his hands. In an area where the pursuing officers had lost sight of appellant and the car, one of the officers found an attache case, an automatic pistol with a silencer, and cartridges. Churan identified these as the same ones appellant had earlier had in his possession.

Appellant assigns numerous grounds for reversing his convictions.

### III

### WAS APPELLANT DENIED HIS RIGHT UNDER SECTION 1382 TO A SPEEDY TRIAL?

Appellant contended numerous times in the trial court and continues to maintain here that his right to a speedy trial under section 1382 was violated. The facts of appellant's case make this a complicated issue. To understand it fully, a complete chronology of events is necessary.

Appellant's conviction in the first trial was reversed by this court on July 31, 1984. After allowing for the appropriate periods for petitions for rehearing and review, a remittitur was issued on October 2, 1984. A defendant must be tried within 60 days of the filing of a remittitur in the trial court (§ 1382).

Appellant first was brought to court on November 21, 1984—10 days before the 60th day which would be December 1.[2] Appellant's attorney, Thomas Burr, who represented him in the first trial, indicated he would not be ready for a trial of the matter before the 60-day limit. Appellant questioned Burr's ability to prepare adequately before the deadline. However, appellant refused to waive his right to a speedy trial to allow Burr or any other attorney to prepare properly. On this basis, the judge set trial for November 27, four days before the expiration of the 60-day limit.

On the day set for trial, appellant refused to accept Burr as his attorney believing he was unprepared. Because of the complexity of his case, the court reminded appellant no other attorney could prepare adequately before

---

[2] One of the apparent reasons for the delay was confusion as to when the remittitur actually was filed, and, therefore, how many days remained before section 1382 would be violated.

the 60 days expired. Appellant reminded the court he would not waive his right to a speedy trial. The court expressed its belief appellant necessarily was waiving this right by insisting on a new attorney. Appellant then brought to the court's attention a writ of habeas corpus and application for release on his own recognizance that he had prepared. Along the way, appellant also challenged the judge for cause. Based on the complexity of the matters before the court, trial was trailed for one day.

On the 28th, the judge and both attorneys discussed the procedures they should follow on the motion challenging the judge for cause. Because this type of motion requires a hearing by another judge, Judge Barrett felt it might be necessary to exceed the 60-day limit. The matter was trailed to the next day. On this same day, a motion to recuse the Merced County District Attorney's office was filed by appellant. Appellant himself prepared this motion and chose December 7 as the hearing date for the motion. That date was six days beyond the 60-day limit. On this basis, the court concluded appellant had waived his speedy trial claim.

On November 29, Judge Barrett noted he had been unable to prepare a response to the disqualification motion, and therefore trailed the matter until the next day. A motion to dismiss was filed on the same day with Judge Felasco, who would be hearing a number of matters until the disqualification motion was resolved. A hearing on the motion to dismiss was set for December 7. Although Burr indicated appellant was not willing to waive his right to a speedy trial, Burr admitted he would not be ready to proceed adequately with a trial until mid-March. Ultimately, Burr agreed, on behalf of appellant, to a trial-setting conference on December 10.

Judge Barrett's response to the disqualification motion was filed and a hearing on the motion was set for December 10 in Judge Felasco's court. Ultimately, all matters were scheduled for December 10 in Judge Felasco's court.

On December 10, the first matter heard was the motion for dismissal based on the alleged violation of the right to a speedy trial. After hearing argument from both sides, the motion was denied. The petition for writ of habeas corpus and the application for own-recognizance release were continued at defense counsel's request until January 3, 1985. The disqualification motion also was continued to that date at defense counsel's request. A decision on whether to replace defense counsel because of his inability to prepare adequately was continued one week.

On December 17, 1984, Neal Morse was substituted as appellant's attorney replacing Burr. On January 3, 1985, the motion to disqualify Judge

Barrett was denied. The remaining matters were transferred to Judge Barrett at this time.

After discussing some other matters on January 9, 1985, a trial date was set at the request of defense counsel Morse. Although there was some concern expressed about appellant's speedy trial challenge, Morse himself requested a 90-day period in which to prepare. The following exchange then occurred: "THE COURT: I don't have any problem with that as long as it's agreeable to the parties, and I don't see any reason why it shouldn't be because of Mr. Morse's recent involvement with the case, and if that's satisfactory, I'll set it, but I think we should have a trial date fixed now because that's been one of our problems.

"MR. MORSE: Your Honor, obviously the setting of a trial date in this case, Mr. Malone has filed his Writ in the Appellate Court, and he is not waiving time. I'm making a request and I'm averring good cause for this continuance at this point in time.

"THE COURT: I've tried to make it clear to Mr. Malone in the past that his rights, whatever they are, they exist despite whatever I do as far as setting this matter for trial, and if his rights have been violated, they have been violated, so I'll set it for trial and set it for a date about 90 days from now." An April 2, 1985, trial date was selected. Appellant was present at this hearing and raised no personal objection to this decision. On February 28, 1985, appellant pleaded no contest to several counts of the information as part of a plea bargain arrangement.

The next relevant event in terms of the speedy trial issue took place on April 10, 1985. On that date, appellant's plea of no contest to two charges and two enhancements was vacated. A new trial date of May 14 was selected at this time with the specific acquiescence of defense counsel and the implied acquiescence of appellant.

On May 8, 1985, Morse sought to continue the trial date beyond the 14th. After some discussion, June 19 was selected as the new trial date. Appellant agreed specifically to this date.

The June 19 trial date apparently was continued in order to hear various pretrial motions, such as a motion for change of venue, on June 21, 1985.

On June 24, the court heard a number of pretrial motions, including a motion to dismiss based on the violation of appellant's right to a speedy trial. The motion ultimately was denied. A jury trial began the next day.

■ Pursuant to California Constitution, article I, section 15, a defendant has the right to a speedy public trial. Section 1382 has clarified that right by designating specific time periods beyond which speedy trial is presumably violated. Therefore, if a trial is delayed more than 60 days, a prima facie violation of a defendant's right has occurred. (*Sykes* v. *Superior Court* (1973) 9 Cal.3d 83, 89 [106 Cal.Rptr. 786, 507 P.2d 90].)

The 60-day limitation, however, is not absolute. This period may be exceeded (1) for good cause, (2) at the request of the defendant, (3) with the defendant's consent, either express or implied, or (4) when the defendant fails to appear. (§ 1382; see also *People* v. *Hernandez* (1979) 97 Cal.App.3d 451, 452-453 [158 Cal.Rptr. 742].) However, trial must commence within 10 days of the extended date. (*Ibid.*)

■ "What constitutes good cause for the delay of a criminal trial is a matter that lies within the discretion of the trial court." (*People* v. *Johnson* (1980) 26 Cal.3d 557, 570 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) Good cause has been found where the delay was caused by the defendant's own conduct. Furthermore, a delay for the defendant's benefit also will be considered a delay for good cause. (*Ibid.*)

■ On the issue of consent, a defendant will be deemed to have consented to a continuance when he or she has failed to make an affirmative objection to a further delay. (*Townsend* v. *Superior Court* (1975) 15 Cal.3d 774, 783 [126 Cal.Rptr. 251, 543 P.2d 619].) Once there is an objection to any further continuance, the critical 10-day period begins to run. (*Ibid.*)[3]

■ When a defendant establishes he or she was not brought to trial within the 60-day period, the burden shifts to the prosecution to show good cause why the case should not be dismissed. (See *Owens* v. *Superior Court* (1980) 28 Cal.3d 238, 250 [168 Cal.Rptr 466, 617 P.2d 1098].) Rather than balance the extent of the delay against any justification, the court must consider whether good cause existed. (See *id.* at p. 252, fn. 15.) Each case must be evaluated on its facts. The trial court's determination will be upheld in the absence of an abuse of discretion.

■ In this case, the most crucial time period involved is the period between October 2, 1984, when the remittitur was filed, and December 1, 1984, the 60-day deadline. Other than workloads and inconvenience, there

---

[3] Our citation of *Townsend* for this point is not in conflict with the discussion of *Townsend* in *People* v. *Johnson, supra,* 26 Cal.3d at pages 566-569. Unlike the situation presented in *Johnson,* both Burr and Morse appeared to consent to continuance "to promote the best interests" of appellant, rather than trying to accommodate their own workloads and pressures. The case was a long and complicated one requiring adequate time for preparation.

is a failure to provide a significant reason why appellant was not returned to Merced County before November 21. At this point, only 10 days remained before section 1382 would be violated. Given the complexity of appellant's case, the likelihood of going to trial within this period with a prepared attorney, even if that attorney had previously handled the case, was slight.

Appellant contends that "[t]he law is perfectly clear that the state may not condition a defendant's speedy trial rights upon waiver of his right to effective counsel." However, the cases he cites for that proposition do not support the statement. Each of those cases concerns congested court calendars and attorneys who are not ready to proceed because of commitments to other clients. In those situations, the courts found there was a lack of good cause for going beyond the 60-day limit. The record before this court does not establish clearly that either a congested court calendar or an overburdened attorney was a substantial factor in delaying the start of appellant's trial.

Acceptance of appellant's arguments regarding the 50-day delay between the filing of the remittitur and his first appearance in court, has no legal support and could establish some very dangerous precedents. Arguably, we can agree that 50 days is an unreasonably long period of time to get appellant back into court. However, there is no designated statutory period within which a defendant must be returned from the state prison to the county for retrial. Generally, a defendant will not be brought back for retrial until a remittitur is filed. Necessarily, there will be delays for administrative reasons. It would be difficult, if not impossible, for this court to determine what a proper period would be.

It should be noted that it was appellant who was unprepared to proceed to trial. The prosecution never sought to delay the proceedings, nor did the court. Instead, appellant's numerous motions and continuous objections to the adequacy of his attorney resulted in the delay of his trial. Although there is some allure to the notion that because the authorities were to blame for failing to return appellant to Merced County for 50 days, and that as a result appellant is prejudiced because no attorney can prepare adequately for trial in 10 days, forcing him to forfeit one right for another, the circumstances of this case justify a rejection of the argument. Both attorneys associated with appellant's case noted it would take them longer than three months to prepare adequately for trial. Consequently, even if appellant had been returned to Merced County soon after the filing of the remittitur, it is likely a waiver of the 60-day period would have been necessary.

Furthermore, even if we accept appellant's argument that he should not have to forfeit one right to exercise another, subsequent conduct by appel-

lant may have supplied the court with good cause for the delay. Specifically, on the day set for trial, appellant filed a motion to disqualify the trial judge for cause. This necessitated a new judge being called to hear the motion and a response from the challenged judge. The next day, appellant filed a motion to recuse the district attorney's office from prosecuting the case. Two facts support the trial court's determination that appellant consented to exceed the 60-day limit. First is the fact these two motions are the type that must be dealt with prior to the beginning of trial. Given the seriousness of the challenges, adequate time must be allotted for response and a hearing. Second is the fact that on the second motion, which appellant prepared and filed himself, a December 7 hearing date was designated. On the record above, appellant's own conduct provided an adequate basis for the delay. Appellant has not demonstrated prejudice. There was no abuse of discretion.

### IV-XII*

. . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Woolpert, Acting P. J., and Best, J., concurred.

A petition for a rehearing was denied July 7, 1987, and appellant's petition for review by the Supreme Court was denied October 15, 1987.

---

* See footnote, *ante,* page 1096.