[No. B085837. Second Dist., Div. Four. Jan. 25, 1995.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
SHANNON ALEXANDER, Real Party in Interest.

COUNSEL

Gil Garcetti, District Attorney, Brent Riggs and Brentford J. Ferreira, Deputy District Attorneys, for Petitioner.

De Witt W. Clinton, County Counsel, and Frederick R. Bennett, Assistant County Counsel, for Respondent.

Michael P. Judge, Public Defender, Eugene Hall and John Hamilton Scott, Deputy Public Defenders, for Real Party in Interest.

OPINION

**VOGEL (C. S.), J.—**

### INTRODUCTION

This writ proceeding, initiated by the People, was triggered by the trial court's dismissal of a pending criminal prosecution for failure to bring the defendant to trial within the period mandated by Penal Code section 1382. This cause, therefore, requires us to determine the legality of the case management policy which led to the dismissal order. We conclude that the trial court's policy contravenes existing law; however, because of the manner in which the trial court proceeded, we are compelled to uphold the dismissal order of the underlying criminal action.

## FACTUAL AND PROCEDURAL BACKGROUND

The South District of the Los Angeles Superior Court, the court in which the present proceeding arose, is composed of separate courtrooms, designated as departments. Criminal cases are handled as follows. The case is initially calendared in a particular department for the defendant's arraignment upon the information. If the office of the public defender is appointed to represent the accused, the case is assigned to the deputy who handles cases arising out of that court. That court is known, in the local legal vernacular, as the deputy public defender's "home court." Generally, pretrial proceedings will be conducted in the "home court." However, when the case is ready for trial, if the "home court" is not available for trial because of conflicting calendar obligations, the case will be transferred to another courtroom, department South "D," for reassignment. Judge Arthur Jean presides in department South "D," handling felony arraignments and preliminary hearing conferences. And, as noted, the six trial courts in the South District send him felony trial matters when it appears that those courts will not be able to commence trial within the statutory period set forth in Penal Code section 1382.

On May 25, 1994, the People filed, in department South "K," an information charging defendant Shannon Alexander with two crimes (Pen. Code, §§ 273.5, subd. (a) and 245, subd. (a)(1)) arising out of her attack upon her husband Jacobe Alexander. She pled not guilty and Deputy Public Defender Eugene Hall (Hall) was appointed as her counsel. The same day, the People filed an information charging Jesus Ramirez with two drug offenses. Ramirez pled not guilty and Hall was appointed as his attorney. Trial on both matters was set for July 21 in Department South "K," Hall's "home court."[1] The last day within Penal Code section 1382's 60-day period to bring each defendant to trial was July 25.

On July 21, both cases were called; each was ready for trial. Department South "K" was then engaged in a trial which was anticipated to continue beyond July 25. Accordingly, both cases were continued to July 22 and transferred to department South "D" for reassignment.

On July 22, Judge Jean, in department South "D," called both cases. Each remained ready for trial and was continued to July 25.

On July 25, Judge Jean called the Ramirez case. The People announced "Ready." Hall was not present. Judge Jean stated: ". . . Mr. Hall has several cases. I'm going to transfer that case to Department 'G' for trial . . . ."

---

[1]All subsequent dates refer to events occurring in 1994.

When Judge Jean thereafter called defendant's case, Hall was *not* present nor was any other deputy public defender.[2] The following colloquy occurred between Judge Jean and the prosecutor staffing department South "D": "The Court: Shannon Alexander will go over until tomorrow as 60 of 60 here in this department. [¶] [Deputy District Attorney]: It's our position that since counsel is engaged the case automatically becomes zero of ten. [¶] The Court: I read the cases that you supplied me and I don't think that's what the law is. I think the law is where there's consent of some sort, I haven't heard the consent from anybody in this case. [¶] [Deputy District Attorney]: Your Honor, then what it's appropriate to do is to bring the defendant up before the court, indicate to the defendant that his attorney is engaged in trial and he has several options. One of them is to ask for another attorney. One of them is to go pro per and the other one is to agree that the case can go over until tomorrow. [¶] The Court: The case is going over until tomorrow as 60 of 60 days, Miss Carvajal."[3]

---

[2]The People's writ petition included a declaration from the prosecutor staffing Judge Jean's court indicating Hall had been present when Judge Jean called defendant's case. Thereafter, respondent superior court filed a verified opposition to the petition and submitted a declaration from Judge Jean also suggesting Hall had been present. However, the return filed by defendant offered a declaration from Hall which asserted he had not been present.

To resolve this factual conflict and to ensure that the record transmitted to this court accurately reflected the proceedings undertaken in the trial court, we ordered the parties, pursuant to rule 12(a) of the California Rules of Court, to prepare an agreed or settled statement on the issue. (See, e.g., *People* v. *Tuilaepa* (1992) 4 Cal.4th 569, 585 [15 Cal.Rptr.2d 382, 842 P.2d 1142]; *People* v. *Hardy* (1992) 2 Cal.4th 86, 183, fn. 30 [5 Cal.Rptr.2d 796, 825 P.2d 781].) The parties have submitted an engrossed settled statement establishing Hall was not present.

The settled statement recites, in toto: "It is hereby settled between the parties: that Deputy Public Defender Eugene Hall Jr. was not present in Department 'D' of the Long Beach Superior Court, when on July 25, 1994 at approximately 9:00 AM, the [case of People v. Alexander] was trailed by the honorable Judge Arthur Jean to July 26, 1994 as day *60 of 60*. [¶] It is further settled between the parties: that on July 25, 1994, during the morning session, no deputy public defender made an appearance on the above entitled case, at the time this matter was trailed. [¶] The Court does now settle and allow the foregoing statement on appeal and certifies that the same is a true and correct statement of the proceedings." (Italics in original.) The statement is signed by Judge Jean.

[3]In a declaration submitted in opposition to the instant writ petition, Judge Jean explained his policy: "Given the heavy caseload, and the limited number of Public Defenders to handle them, it often occurs that a lawyer will have several matters come up for trial at approximately the same time. Rather than pick one, deem the lawyer 'engaged' and continue the other cases with time waivers or consents, I will 'stack' the cases in my court or in a trial court and require that the cases be tried one after the other. Absent some countervailing consideration, I usually give the People the choice of order of trial because of their generally greater burden of production. I find that this is a far more efficient and predictable method of trial court management than the continuance and time waiver method. The 'stacking' method permits both sides to know, as much as it is possible to know, what is happening and what is going to happen for purposes of planning and witness convenience. The continuance method

By stating that on the next day defendant's case would be "60 of 60 days," the court indicated there would be no period in which the case would trail and that as a result, trial would have to commence that day—July 26.[4]

Later that afternoon on July 25, Judge Jean again called defendant's case. At first, he indicated he would send it "to Department 'G' forthwith for further proceedings" but then decided to wait until the next day because the prosecutor handling the case (Kevin Greber) was not then available.

At some point during that day (July 25), Hall went to department South "G" to handle People v. Ramirez (Super. Ct. L.A. County, 1994, No. NA019513). At 2:20 p.m., the parties conducted reported proceedings about a possible plea bargain during which Ramirez repeatedly stated his dissatisfaction with the proposed sentence. After an off-the-record discussion between Ramirez and Hall, Hall stated: "Let's go to trial." However, at 2:45 p.m., Ramirez pled guilty, thereby disposing of the matter.

Hall thereafter returned to Judge Jean's court and indicated his ready status in defendant's matter. At that point, defendant, who was in custody, had already been returned to county jail. Believing it to be impractical to attempt to return defendant to court that afternoon, Judge Jean let his prior order remain in effect. Hall never lodged a formal objection to Judge Jean's earlier order continuing defendant's case to July 26.

On July 26, Judge Jean called defendant's case and sent it to department South "E," Judge Romero presiding, for trial. In Judge Romero's court, the prosecutor, defendant, and Hall appeared. Hall stated: "When I appeared in Department D at approximately nine o'clock, 9:15, I had been told that the matter—that the previous matter [of People v. Ramirez] had been sent to Department G for trial and that this case had been trailed until tomorrow to 7/26. . . . None of that was done in my presence, however. I understand that that is—I understand from sources that that is the custom of Judge Jean. However, for the record, I do feel compelled as Miss Alexander's attorney to at this time make a motion to dismiss this case pursuant to 1382 of the Penal Code, since today is 61 of 60, and there was no finding of good cause with her attorney present and with her present as she is entitled to for the case to have been continued even one day. . . . The case that I was sent to Department G on was a last day case. However, I was not technically engaged . . . ."

---

strings out the cases into the future and creates a 'churn' of cases which tends to increase case inventory to the detriment of all parties."

[4]The court's minute order for July 25 states: "Case called for jury trial[.] . . . Defendant not present, but was represented by Eugene Hall[.] Court finds good cause to trail trial as 10/10, counsel engaged in trial. Next scheduled event: 07/26/94 830 AM Jury Trial."

The court did not immediately rule upon Hall's motion to dismiss but instead engaged in a colloquy with the prosecutor about the failure of the victim (Jacobe Alexander), who had been coming to court, to appear that day. Judge Romero ultimately found the victim's unavailability did not constitute good cause to continue the matter because the victim had not been ordered to return that day. The prosecutor urged the People should have the benefit of the 10-day grace period found in Penal Code section 1382, subdivision (a)(2)(B) to become ready for trial,[5] but Judge Romero felt bound by Judge Jean's earlier determination that July 26 was the last day the People had to commence defendant's trial. After the People announced they were unable to proceed because of the victim's nonappearance, Judge Romero granted defendant's motion to dismiss.

Thereafter, the People initiated this writ proceeding to challenge the dismissal of defendant's case as well as Judge Jean's orders continuing two other "last-day" cases (People v. Simpson (Super. Ct. L.A. County, 1994, No. NA019883) and People v. Canales (Super. Ct. L.A. County, 1994, No. NA017798)) in the absence of the defendants. Contending that Judge Jean's case management policy for last day cases is inconsistent with law and improperly "requir[es] the People to be ready at all times in all such cases; a situation which will ultimately lead to many more unwarranted dismissals of criminal cases," the People also seek an order "prohibiting Judge Jean from continuing cases day-to-day without seeking to obtain the attendance of the defendants . . . ."

Based upon the representation in the People's petition that Hall had been present on July 25 when Judge Jean had continued defendant's case—a representation we subsequently learned was incorrect—(see fn. 2, *ante*), we issued an order to show cause why a writ should not issue directing the

---

[5]The prosecutor urged: "But the fact of the matter is today is really zero of ten. I disagree strongly with Judge Jean's interpretation of his calendar management. The fact is Mr. Hall has two 60 of 60 cases. All sides on both cases for the People and the defense had announced ready on both of those cases. Irrespective of what counsel wishes, the court is free to send whichever case of those two 60 of 60's out that it wants to. So, when the court sent Mr. Hall's other case out, this doesn't become 61 of 60 or 11 of 10. This becomes zero of ten on the next day. The fact was that when Judge Jean sent out the other case to Department G, this case that Mr. Hall was also on was trailed by the court to follow that case in Department G, trailed on a day-by-day basis in Department D. Now, there are several instances where an attorney has two last day cases, and action is taken simultaneously on both of them. One of them is sent out to a court, and one of them is trailed to the next day, and the one that gets sent out to the court ironically, later on, gets settled by disposition. That doesn't change the fact that the other case did get trailed to the next day, and the fact matter [*sic*] of the matter is it should be zero of ten, because counsel is engaged in trial, is not available, is no longer ready on that case. If you have two last day cases, you can't be in two places at two times, and the defense is then not ready when the first case gets sent out and the second case gets put over to the 61st or 11th day, but, technically, the clock is then zero. It's zero of ten."

superior court to vacate the dismissal of defendant's case and "to allow the People the required ten-day period to commence trial after the last day to which trial has been continued because the defense is not ready to proceed. (See *Malengo* v. *Municipal Court* (1961) 56 Cal.2d 81[3] . . . .)"

The issues raised in the Simpson and Canales matters, however, are now moot; in Simpson, the defendant pled guilty and, in Canales, a jury trial was conducted. Nonetheless, the petition still presents an important question involving the administration of the criminal justice system: is Judge Jean's "stacking" policy consistent with law? Given that our trial courts are experiencing an ever-increasing congestion of criminal matters, it is imperative that appellate courts give guidance when a trial court implements a case management policy to deal with this burgeoning caseload and that policy is challenged as being contrary to law. Secondarily, to the extent the petition contests the dismissal of People v. Alexander, our determination of the validity of that dismissal order is important because at oral argument the representative of the Office of the Los Angeles District Attorney stated that after filing this petition, the People dismissed a *second* case they had already initiated against defendant.[6] Thus, unless we reverse Judge Romero's dismissal order, the People will be unable to prosecute defendant for the charged offenses. (Pen. Code, § 1387.)[7]

## DISCUSSION

This proceeding raises two questions: the legality of Judge Jean's case management policy and the propriety of the court's dismissal of People v. Alexander (Super. Ct. L.A. County, 1994, No. NA019870). To resolve those issues, we begin with a review of the pertinent law.

Penal Code section 1382 provides that absent a showing of good cause, a felony prosecution is to be dismissed if the defendant is not brought to trial within 60 days after the information is filed unless the "defendant requests or consents to the setting of a trial date beyond the 60-day period. Whenever a case is set for trial beyond the 60-day period by request or consent, expressed or implied, of the defendant without a general waiver, the defendant shall be brought to trial on the date set for trial or within 10 days thereafter."

[6]On the same day (July 26) Judge Romero dismissed the information, the People filed another complaint against defendant. However, after filing the present request for extraordinary relief, the People dismissed that case in order to ensure that the petition would not be mooted by a subsequent prosecution of defendant. That is, the People believed dismissing the second case was necessary to preserve their ability to pursue the serious issues raised by the petition. (But see, e.g., *In re William M.* (1970) 3 Cal.3d 16, 23-25 [89 Cal.Rptr. 33, 473 P.2d 737] [appellate court has discretion to decide a case which, although moot as to the parties, raises an issue of substantial and continuing broad public concern].)

[7]Had the People not already filed and dismissed a second case, they could have prosecuted defendant after this court rendered its opinion in the present proceeding. (*People* v. *Farrow* (1982) 133 Cal.App.3d 147, 150, fn. 3 [184 Cal.Rptr. 21].)

In *Townsend* v. *Superior Court* (1975) 15 Cal.3d 774, 780-782 [126 Cal.Rptr. 251, 543 P.2d 619], our Supreme Court held that because section 1382 was enacted to supplement and define the constitutional right to a speedy trial, the statutory right to be tried within 60 days was not of a fundamental character and thus could be waived by defense counsel over the client's objections (*id.* at p. 780) unless counsel was " 'ineffective' " (*id.* at p. 781), "inadequate" (*id.* at p. 784), " 'lazy' " (*ibid.*), or " 'indifferent.' " (*Ibid.*)

*People* v. *Johnson* (1980) 26 Cal.3d 557 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255] limited a portion of the *Townsend* holding. There, the deputy public defender requested continuances beyond the statutory time period because of calendar conflicts. The trial court granted the requests, over the defendant's objections. Our Supreme Court found that defense counsel's consent was invalid. It reasoned: "[W]hen the public defender, burdened by the conflicting rights of clients entitled to a speedy trial, seeks to waive one client's right, that conduct cannot be justified on the basis of counsel's right to control judicial proceedings. The public defender's decision under these circumstances is not a matter of defense strategy at all; it is an attempt to resolve a conflict of interest by preferring one client over another. As a matter of principle, such a decision requires the approval of the disfavored client. (Cf. ABA Code of Prof. Responsibility, EC 5-16.) We conclude that the consent of appointed counsel to a postponement of trial beyond the statutory period, if given solely to resolve a calendar conflict and not to promote the best interests of his client, cannot stand unless supported by the express or implied consent of the client . . . ."[8] (26 Cal.3d at pp. 566-567.) In a footnote to this holding, the court noted that the accused's

---

[8]We set forth and rely upon this portion of the *Johnson* holding because, as an intermediate appellate court, we are bound to decide cases according to the decisional law set forth by our state Supreme Court. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Nonetheless, it is appropriate for an intermediate Court of Appeal to record its disagreement with existing law when the matter involves an area of public importance. (*Craig* v. *Superior Court* (1976) 54 Cal.App.3d 416, 424-425 [126 Cal.Rptr. 565] (conc. opn. of Elkington, J.); see also *People* v. *Von Staich* (1980) 101 Cal.App.3d 172 [161 Cal.Rptr. 448].) We believe this case involves such an area.

To begin, we note *Johnson* was decided by a closely divided court. Justice Richardson wrote a dissent, joined by two other justices. He criticized the majority for departing from *Townsend* by refusing to defer to trial counsel's decisions regarding caseload management when the only right implicated was the *statutory* right to a speedy trial. (*People* v. *Johnson, supra,* 26 Cal.3d 557, 580-586 (dis. opn. of Richardson, J.).) He explained the many practical difficulties the majority opinion posed both to effective court calendar management and to public safety. Suffice it to note, we believe those concerns are as valid today as they were when written 15 years ago.

Furthermore, we believe the *Johnson* court could not have reasonably anticipated the extraordinary increase in the number of criminal cases filed in our trial courts. For instance, during the fiscal year 1979-1980, 57,932 felony cases were filed statewide in the superior

failure "to make timely objection to a postponement constitutes implied consent to the postponement." (*Id.* at p. 567, fn. 7.)

The Supreme Court reasoned that an accused's right to a speedy trial cannot be denied because of the state's failure to provide a sufficient number of defense counsel and that the accused cannot be forced to choose between the right to a speedy trial and the right to representation by competent counsel. "The state cannot reasonably provide against all contingencies which may create a calendar conflict for public defenders and compel postponement of some of their cases. On the other hand, routine assignment of heavy caseloads to understaffed offices, when such practice foreseeably

courts; for the fiscal year 1992-1993, that number had increased to 155,971. (Judicial Council of Cal., Ann. Rep. (1981) p. 178; Judicial Council of Cal., Ann. Rep. (1992-1993) p. 39.) Thus, it is not surprising that a deputy public defender with a large caseload must choose to try one matter and trail all others, even though each case is ready for trial and each defendant has a statutory right to commence trial immediately. In that situation, defense counsel's decision to try the one case is necessarily made in derogation of each other client's interest to begin trial immediately. Only in very limited situations would that not be the motive because the practical reality is that defense counsel cannot do two things at once. Simply stated, this situation is the consequence of our high volume criminal justice system.

At this juncture, it is not realistic to believe that the government could ever fund a sufficient number of defense counsel to avoid the common calendar congestion problem which creates this situation. As the *Johnson* dissent noted 15 years ago, the judiciary is powerless to require more funds be used to procure additional defense counsel, lacks the power to direct construction of more courtrooms, and may not reorder the priorities of local government. (*People* v. *Johnson, supra,* 26 Cal.3d at pp. 583 and 586 (dis. opn. of Richardson, J.).) It is common knowledge that the public fisc is shrinking, not expanding.

Given the intractable nature of the problem and the fact that counsel's decision to continue a case over the client's objection, at most, results in the loss of the *statutory right* to begin trial within 60 days, we agree with Justice Richardson that absent evidence that trial counsel's representation is constitutionally deficient, the trial court should defer to counsel's decision to continue the case. Even the *Johnson* majority did not question defense counsel's integrity or competence in seeking continuances over his client's objections. (*People* v. *Johnson, supra,* 26 Cal.3d at p. 568, fn. 10.) "By choosing professional representation, the accused surrenders all but a handful of 'fundamental' personal rights to *counsel's* complete control of defense strategies and tactics. [Citations.]" (*People* v. *Hamilton* (1989) 48 Cal.3d 1142, 1163 [259 Cal.Rptr. 701, 774 P.2d 730], italics in original.) The situation would, of course, be different, if the state or federal constitutional right to a speedy trial were implicated by counsel's decision. Waiver of such a fundamental right falls within the defendant's ultimate control. (*People* v. *Johnson, supra,* 26 Cal.3d at pp. 580-581 (dis. opn. of Richardson, J.).)

Consequently, we believe the matter would best be handled on a case-by-case basis. As Justice Richardson stated in criticizing the *Johnson* majority's willingness to second-guess trial counsel's decision to continue the case, "[u]nless a record clearly reflects circumstances of judicial or prosecutorial indifference, or harassment or prejudice to the defendant, . . . [an appellate court] should defer to trial counsel's decisions regarding the management of the trial for it is his responsibility to conduct it, and do so in a manner and according to the standards . . . carefully prescribed . . . in *People* v. *Pope* (1979) 23 Cal.3d 412, 425 . . . . Trial courts can be trusted to monitor the cases carefully, constantly sensitive and alert to any instances of abuse or overreaching." (*People* v. *Johnson, supra,* 26 Cal.3d at pp. 585-586 (dis. opn. of Richardson, J.).) We therefore invite our Supreme Court to reconsider *Johnson.*

will result in the delay of trials beyond the 60-day period without defendant's consent, can and must be avoided. A defendant deserves not only capable counsel, but counsel who, barring exceptional circumstances, can defend him without infringing upon his right to a speedy trial. Thus the state cannot rely upon the obligations which an appointed counsel owes to other clients to excuse its denial of a speedy trial to the instant defendant." (*People v. Johnson, supra*, 26 Cal.3d at p. 572; see, in general, Annot., Continuances at Instance of State Public Defender or Appointed Counsel Over Defendant's Objections as Excuse for Denial of Speedy Trial (1982) 16 A.L.R.4th 1283.)[9]

Thus, it has been held that trial counsel's engagement in another trial does not constitute good cause to continue a trial beyond the statutory time period *over a defendant's objection.* (*People v. Escarcega* (1986) 186 Cal.App.3d 379, 386-387 [230 Cal.Rptr. 638].) Relying upon *People v. Johnson, Escarcega* criticized the trial court because it had failed to inquire whether the delay was attributable to the fault or neglect of the state in failing to provide sufficient defense counsel to implement the right to a speedy trial. Additionally, the *Escarcega* court noted that the record contained no indication that there were "extraordinary circumstances" to justify the delay caused by appointed counsel's congested calendar.

*Eshaghian* v. *Municipal Court* (1985) 168 Cal.App.3d 1070 [214 Cal.Rptr. 712] offers an example of how a trial court resolved the conflicts created when appointed counsel was unable to go to trial within the statutory time period. There, on the last day to commence trial within the statutory time period, the defendant's public defender was ready for trial but, at 4 p.m., *unforeseeably* became engaged in another matter. The trial court explained to the defendant that he had three alternatives: (1) he could waive the right given by Penal Code section 1382 and continue to have his public defender represent him; (2) he could have another attorney appointed to represent him; or (3) he could elect to represent himself. The defendant elected to have new counsel appointed. The court relieved the public defender and appointed different counsel. In a subsequent writ proceeding, the defendant attacked the continuances made first to find new counsel and second to permit that attorney to prepare. The Court of Appeal found each of the contested continuances was properly granted.

■ We distill the following principles from these cases. Defense counsel should inform "the court of every case in which he is presently prepared for

---

[9]Recognizing the possibility of defense manipulation of the situation to secure a dismissal, the *Johnson* court also held: "It would . . . be improper for appointed counsel deliberately to overbook his calendar or otherwise conduct himself so as to delay trial and thereby secure a dismissal of the charges against his client; such deliberate delay, because undertaken for the benefit of the defendant, would constitute good cause to deny a motion to dismiss." (*People v. Johnson, supra*, 26 Cal.3d at p. 573, fn. 17.)

trial, even if trial dates may conflict, so that the court can determine the order in which the cases should be tried." (*People* v. *Johnson, supra,* 26 Cal.3d at p. 568, fn. 9.) If the court then assigns case "A" for trial, trails the other "last-day" cases without objection from those defendants, and commences trial in case "A,"[10] the consent of the defendants in the remaining cases to continue their matters is implied. (*Townsend* v. *Superior Court, supra,* 15 Cal.3d at p. 783.) In the trailing cases, once defense counsel announces "ready," the 10-day grace period is triggered, giving the People 10 days to bring the matter to trial. (See, e.g., this division's opinion in *Bryant* v. *Superior Court* (1986) 186 Cal.App.3d 483, 488-499 [230 Cal.Rptr. 777].) No good cause is necessary for the People to be able to continue the matter *within* the 10-day period. (*Malengo* v. *Municipal Court* (1961) 56 Cal.2d 813, 815-816 [17 Cal.Rptr. 10, 366 P.2d 453]; *People* v. *Rubaum* (1980) 110 Cal.App.3d 930, 934-936 [168 Cal.Rptr. 291]; see also *People* v. *Ferguson* (1990) 218 Cal.App.3d 1173, 1178-1179 [267 Cal.Rptr. 528]; *Bryant* v. *Superior Court, supra,* 186 Cal.App.3d 483, 496-498; *People* v. *Arnold* (1980) 105 Cal.App.3d 456, 459-460 [164 Cal.Rptr. 367]; *People* v. *Hernandez* (1979) 97 Cal.App.3d 451, 454-455 [158 Cal.Rptr. 742]; *People* v. *Kessel* (1976) 61 Cal.App.3d 322, 324-325 [132 Cal.Rptr. 126]; and *People* v. *Flores* (1979) 90 Cal.App.3d Supp. 1, 8 [152 Cal.Rptr. 896].)

If, however, the defendant expressly objects to the continuance of his case, the trial court should ascertain why defense counsel cannot commence trial for the objecting defendant within the statutory period. (*People* v. *Johnson, supra,* 26 Cal.3d at pp. 572-573.) If the reason for the delay is to benefit the defendant (e.g., defense counsel needs additional time to prepare the case or to secure witnesses) or arises from an unforeseen or exceptional circumstance (e.g., counsel unexpectedly became engaged in another matter), the case can properly be continued. (*Ibid.,* and see *People* v. *Malone* (1987) 192 Cal.App.3d 1096, 1103, fn. 3 [237 Cal.Rptr. 794], and *Eshaghian*

---

[10]The People urge the trial court's assignment of case "A" to trial when defense counsel is carrying multiple cases is sufficient to imply consent to continue the other matters whereas defendant maintains trial must actually commence in case "A" in order to imply that consent. Resolution of this dispute is not necessary to our present decision. Nonetheless, we note a portion of *Townsend* v. *Superior Court, supra,* 15 Cal.3d 774, supports the People's position. There, on Tuesday, November 12, defense counsel announced he was "ready" to begin defendant Townsend's trial even though he was trailing in another case (the Bond matter) which he felt was the more important of the two, but in which trial had not yet commenced. (*Id.* at p. 778.) The Bond matter was tried on Friday, November 15, so that defense counsel was ready to try Townsend's case on Monday, November 18. Our Supreme Court held: "While the record discloses that on November 12 defense counsel responded that he was 'ready' for trial [in the Townsend case], in truth and in fact he was not 'ready' to proceed because of legitimate commitments in another case [the Bond matter] and it was not until November 18 that he was actually and unconditionally free to commence trial proceedings in [Townsend's] case . . . ." (*Id.* at p. 783.)

v. *Municipal Court, supra*, 168 Cal.App.3d 1070.) If the delay is attributable to the state's failure to provide a sufficient number of defense counsel, the court should inquire whether another attorney could be appointed to bring the matter to trial within the statutoty period. (*People* v. *Johnson, supra*, 26 Cal.3d at p. 572, and *Gomez* v. *Municipal Court* (1985) 169 Cal.App.3d 425, 435, and fn. 11 [215 Cal.Rptr. 206].) If that is not possible, the trial court should grant defense counsel's request for a continuance, notwithstanding the defendant's express objection. (*People* v. *Johnson, supra*, 26 Cal.3d at p. 572.) If trial is not ultimately commenced in a timely manner, the cause is subject to dismissal upon proper motion if the accused establishes the delay was "attributable to the fault or neglect of the state." (*Id.* at p. 573.)[11]

■ On the other hand, if the trial court assigns case "A" for trial and continues the other last-day cases based upon its unilateral finding of good cause, then the date to which each matter is continued is the day trial *must* begin, assuming defense counsel announces "ready" and good cause does not exist to justify a *further* delay. (See *Tudman* v. *Superior Court* (1972) 29 Cal.App.3d 129, 133 [105 Cal.Rptr. 391]; see also *Owens* v. *Superior Court* (1980) 28 Cal.3d 238, 249-250 [168 Cal.Rptr. 466, 617 P.2d 1098], and *Perez* v. *Superior Court* (1980) 111 Cal.App.3d 994, 998, fn. 2 [169 Cal.Rptr. 45].) That is, the People are not given the benefit of a 10-day grace period to ensure their witnesses appear in court. This is because a continuance based upon a finding of good cause is not construed as a continuance granted with the express or implied consent of the accused. And the 10-day grace period is triggered only when "a case is set for trial beyond the 60-day period by request or consent, expressed or implied, of the defendant . . . ." (Pen. Code, § 1382, subd. (a)(2)(B).) The rationale for allowing the 10-day grace period in such a situation is that given the defendant's consent to the continuance, 10 days is a reasonable time in which to commence trial. (*People* v. *Hernandez, supra*, 97 Cal.App.3d 451 at p. 455.)

■ In this regard, county counsel's opposition to the present writ petition explicitly recognizes that the delay caused by Judge Jean's "stacking" of the cases was done on Judge Jean's own motion for good cause and not at defendant's request, thereby rendering inapplicable the 10-day grace period. From the People's point of view, this is the central vice of Judge Jean's methodology. As explained in a declaration from the acting head deputy of

---

[11]A practical question arises as to who will make this motion to dismiss. Should it be the attorney whose request for a continuance to serve the interests of another client resulted in the failure to bring the matter to trial within the statutory time period? Should it be the accused, often an individual unschooled in the law, in pro. per.? Or must the court appoint new counsel to represent the defendant in this instance? This is just one aspect of the conundrum created by the *Johnson* holding. (See fn. 8, *ante.*)

the district attorney's Long Beach branch office, this procedure adversely impacts the People's ability to be ready for trial, needlessly requiring witnesses and victims to remain in a constant state of readiness and sometimes resulting in the loss of those individuals.

The events in this case (People v. Alexander, *supra*, No. NA019870) amply illustrate the vitality of the People's concerns. Judge Jean, on his own motion, found good cause and continued the matter to July 26. Because the defense announced its readiness to go to trial on July 26, the People were obligated to commence trial that day. Unfortunately, the victim did not appear. Because the prosecutor had not asked the court to order the victim to return the next day, the People had not exercised due diligence to obtain his attendance. Thus, the victim's nonappearance did not constitute good cause to support a People's request for a further continuance. (See *Owens* v. *Superior Court, supra*, 28 Cal.3d 238, 250-252; *People* v. *Johnson, supra*, 26 Cal.3d at p. 570, fn. 15, and *Gaines* v. *Municipal Court* (1980) 101 Cal.App.3d 556, 560-561 [161 Cal.Rptr. 704].) The People were therefore unable to proceed and the case was dismissed. If, however, Attorney Hall had been present when Judge Jean continued the case on July 25 and there had been no objection to Judge Jean's order, Hall's announcement of readiness on July 26 would have merely started the running of the 10-day period and the People would have been given the 10-day period to contact the victim and arrange his appearance.

While it cannot be disputed that Judge Jean has the inherent power to control the proceedings in front of him (see *People* v. *Gaynor* (1963) 223 Cal.App.2d 575, 582 [36 Cal.Rptr. 219]), including setting the order in which cases are to be tried (*People* v. *Torres* (1984) 159 Cal.App.3d Supp. 8, 13 [206 Cal.Rptr. 537]), that power must be exercised consistent with existing statutory and decisional law. His unilateral decision to find good cause and set the order of cases *in the absence of defense counsel and the defendant* is what causes the problem. His method precluded both from objecting and deprived the People of the advantages of the 10-day grace period in a situation in which traditionally it has been available. If defense counsel were present when Judge Jean made his order and did not object and no objection was forthcoming from the defendant(s), implied consent to all court-ordered continuances would be found. The statutory time in which to bring defendant to trial would not begin unless and until defense counsel finally announced ready on a particular case. Then, the 10-day period would commence for that matter.

Because of the manner in which Judge Jean handled the matter, we are compelled to affirm the order of dismissal in defendant's case. Assuming

arguendo that Judge Jean had good cause to continue the case from July 25 to July 26 because it reasonably appeared that Hall would be unavailable to try the matter because his presence was required in department South "G" on People v. Ramirez, *supra*, No. NA019513, either to try that matter or to resolve it by negotiated disposition (compare *People* v. *Superior Court, (Lerma)* (1975) 48 Cal.App.3d 1003, 1010 [122 Cal.Rptr. 267], with *People* v. *Johnson, supra*, 26 Cal.3d at pp. 570-571, and *Gomez* v. *Municipal Court, supra*, 169 Cal.App.3d 425, 432-433), the People had to commence trial on July 26.[12]

Hall's absence at the time Judge Jean called and continued defendant's case on July 25 precludes a finding of implied consent to the delay. Contrary to the People's suggestion, Hall's failure to object later in the afternoon when he had concluded the Ramirez matter and learned of the continuance cannot be construed as consent. Nothing could have been gained by making that objection because it is highly unlikely trial could have commenced. It was late in the day. Defendant had already been transported back to county jail. The record does not indicate that the prosecutor assigned to the case, who earlier that afternoon had been unavailable, was now ready to begin the trial. Nor is there anything to establish that a courtroom was available for trial.

As the record does not support a finding of implied consent, the People cannot rely upon the 10-day grace period to commence trial. Consequently, the People had only one day—July 26—in which to bring defendant to trial. The prosecutor was unable to do so because of the victim's absence. As the People now implicitly concede, because the victim had not violated a court order to appear on July 26, good cause did not exist to support an additional continuance. The dismissal order must therefore be affirmed.

In regard to Judge Jean's policy, as well motivated as it is, it effectively undermines the legislative policy behind Penal Code section 1382. **(4)** The proper procedure for a court to follow when confronted with a situation of defense counsel announcing "ready" on more than one "last-day case" is to have defense counsel and the accused present. At oral argument, defense counsel recognized the practical problem of delaying each matter until an in-custody defendant was brought to the courtroom and suggested that it

---

[12]Defendant's position is that Judge Jean's actions were improper because consent to the continuance cannot be implied as neither she nor counsel was present when he made his order. She also maintains that good cause did not support the continuance. She therefore contends that the dismissal order, made on July 26, was proper because she was not brought to trial within 60 days of the filing of the information— July 25. We need not reach the merits of this analysis for we shall assume, arguendo, that there was good cause to continue the matter for one day.

would not be improper to proceed in the defendant's absence if counsel made an oral representation of authority to do so. Nonetheless, we believe the preferred procedure is to have the defendant present. That procedure will forestall any subsequent claims by the accused that defense counsel had not been given authority to waive the statutory speedy trial right or that the accused had specifically objected to any continuances.[13] In the presence of defense counsel and the defendant, the court either can determine which case will start trial first or can ask counsel to select that matter. In either event, absent an objection from the remaining defendants, their consent to the continuance will be implied.[14] (See fn. 10, *ante*.)

If an objection from a remaining defendant is forthcoming, the trial court, cognizant of the principles that a continuance granted at counsel's implied consent is valid absent "evidence showing incompetency of counsel [citation] or circumstances where counsel's request for a continuance is prompted only by the need to service other clients . . . [citation]" (*People* v. *Wright* (1990) 52 Cal.3d 367, 389 [276 Cal.Rptr. 731, 802 P.2d 221]), should determine the reason for counsel's inability to commence trial that day. (*People* v. *Johnson, supra,* 26 Cal.3d at p. 573; *People* v. *Escarcega, supra,* 186 Cal.App.3d at pp. 386-387.) If it is due to the state's deficiency in providing adequate number of competent defense counsel, the court should ascertain if other counsel can be appointed to bring the matter to trial within the statutory time period.

On the other hand, if the court finds the delay is required to further the client's interest, the matter does not fall within the limited situation criticized by *People* v. *Johnson, supra,* 26 Cal.3d at pages 566-567. Instead, the matter is clearly governed by *Townsend* v. *Superior Court, supra,* 15 Cal.3d at page 780, so that counsel's decision to waive the statutory right to a speedy trial will override the client's objection. In that instance, the trial court may properly continue the case. We believe the same reasoning would apply if the requested continuance was due to an unforeseen or exceptional circumstance, such as illness of counsel, since that circumstance constitutes good cause for a continuance. (*People* v. *Johnson, supra,* 26 Cal.3d at p. 570, and fn. 15.) In either of these two situations, *Eshaghian* v. *Municipal Court, supra,* 168 Cal.App.3d 1070, appears to suggest that if, notwithstanding the

---

[13]Penal Code section 977, subdivision (b)(1) provides an accused felon shall be present unless the accused has executed in open court a written waiver of the right to be present. We are assuming there is no presentation of such a waiver.

[14]To a very large extent, defendant's presence is required because of *Johnson*'s holding that defense counsel's authority to request a continuance cannot override the client's objection when the reason for the request is to service other clients. Were our Supreme Court to reconsider *Johnson* and reinvest in counsel the authority to make that type of decision (see fn. 8, *ante*), the procedures set forth in this opinion would also warrant reexamination.

fact that the trial court can properly grant counsel's request for a continuance over the defendant's objection, the defendant still insists upon being brought to trial within the statutory period, the court should explain the following two alternatives. Either the accused can elect self-representation[15] or another defense counsel can be appointed, bearing in mind that the defendant should be advised that the second alternative will almost always necessitate a continuance in order to give newly appointed counsel adequate time to prepare so as to ensure the right to effective representation of counsel. We do not necessarily agree with *Eshaghian's* suggestion because if, in fact, the delay is for the client's interest, such as to do further investigation or to contact witnesses, or is justified by good cause, counsel's decision should be final. Nonetheless, we recognize that the trial courts, out of an abundance of caution, may still wish to explain these alternatives to the accused.

## DISPOSITION

The order to show cause, having served its purpose, is discharged. The petition for a writ of mandate to compel respondent court to set aside its dismissal order in People v. Alexander (Super. Ct. L.A. County, 1994, No. NA019870) is denied.

Epstein, J., concurred.

**WOODS (A. M.), P. J.,** Concurring and Dissenting.—I concur in this opinion except as to the views expressed in footnote 8. I cannot endorse relieving court congestion at the expense of defendant's speedy trial rights. In my view providing adequate attorneys and facilities to try the cases brought by the state is still the state's responsibility. The *Johnson* alternatives of in propria persona representation or last minute substitution of counsel leave much to be desired but the answer is not to tell the defendant to stand in line. (*People* v. *Johnson* (1980) 26 Cal.3d 557 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

On February 23, 1995, the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied April 13, 1995.

---

[15]If the accused elects the option of self-representation, the court's decision to grant or deny that request would, of course, be subject to the principles which generally govern that situation. (See, in general, 5 Within & Epstein, Cal. Criminal Law (2d ed. 1989) Trial, §§ 2816-2819, pp. 3423-3432, and cases cited therein.)