Filed 7/3/14  P. v. Riccardi CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN ALEXANDER RICCARDI,<br><br>    Defendant and Appellant. | B246949<br><br>(Los Angeles County<br>Super. Ct. No. A086662) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Antonio Barreto, Jr., Judge.  Affirmed.

Susan K. Shaler, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Keith H. Borjon and Stephanie C. Brenan, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

In 1994, a jury found appellant John Alexander Riccardi guilty of two counts of first degree murder by use of a firearm (Pen. Code, §§ 187, subd. (a), 12022.5, subd. (a)),[1] and also found true the special circumstance allegations of multiple murders (§ 190.2, subd. (a)) and committing one of the murders while engaged in the commission of a burglary (§ 190.2, subd. (a)(17)). Appellant was sentenced to death. On July 16, 2012, the California Supreme Court issued an opinion reversing the judgment of death because of the erroneous excusal of a prospective juror during jury selection. The Supreme Court reversed the burglary special circumstance finding and reversed one of the two multiple-murder special circumstance findings. It affirmed the judgment in all other respects. The People chose not to retry the penalty phase and the trial court sentenced appellant to life without the possibility of parole, plus a concurrent term of 25 years to life.

Appellant contends the sentence must be reversed and the case ordered dismissed because he was not retried within the 60 days required by section 1382.

Appellant's sentencing hearing was timely and we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. Reversal of Judgment of Death and Issuance of Remittitur by California Supreme Court

On July 16, 2012, the California Supreme Court reversed the death judgment because of the erroneous excusal of a prospective juror during jury selection. The State of California through the Office of the Attorney General ("AG") petitioned for rehearing challenging the reversal of the death judgment. On September 26, 2012, the Supreme Court denied the rehearing petition, and issued the remittitur.

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

[2]    The appeal is limited to issues related to appellant's resentencing and does not implicate his convictions. For that reason we summarize the lengthy postconviction proceedings at issue in this appeal and do not discuss the underlying crimes.

**B.     Removal Order Requested by District Attorney's Office**

On October 29, 2012, the Office of the Los Angeles County District Attorney ("DA") submitted an order for appellant's removal from state prison to Department F of the Airport Courthouse of the Los Angeles Superior Court for "pretrial and trial proceedings" of the penalty phase.  Judge Dabney signed the removal order on October 29, 2012.[3]

**C.     November 15, 2012 Initial Hearing in the Assigned Trial Court**

On November 15, 2012, appellant appeared before Judge Antonio Barreto, Jr., in Department B of the Airport Courthouse of the Los Angeles County Superior Court.[4] Judge Barreto appointed the Office of the Public Defender to represent appellant.  Judge Barreto identified two pending issues:  (1) whether the AG would file a certiorari petition in the United States Supreme Court on behalf of the People; and (2) if the petition was not filed, whether the DA would elect to seek a death sentence again by penalty phase retrial.  The deputy district attorney stated that she expected a decision on whether or not to proceed with a penalty phase retrial would be made in approximately six days and suggested the matter be put over until November 21, 2012.

When appellant's counsel informed appellant that the AG was considering seeking certiorari "to try to appeal the decision of the California Supreme Court," appellant responded, "Oh.  Good."  Appellant told Judge Barreto–in reference to his original sentence of death–that he wanted to "[l]eave it the way it was."

Judge Barreto stated he was "aware of the potential time situation" on the case since he "became aware of the remittitur" when it was "delivered to [him] on October 25."  Judge Barreto ordered appellant to return on November 21, 2012, and informed appellant that he had not waived any rights.

---

[3]     The assigned deputy district attorney explained at later hearings that she had been informed by the superior court that the case was assigned to Judge Dabney's courtroom.

[4]     On November 15, 2012, appellant initially appeared in Judge Dabney's courtroom. Judge Barreto informed Judge Dabney that the case was "matrixed" to Judge Barreto's courtroom.

**D.      November 21, 2012 Hearing**

At the November 21, 2012 hearing, the deputy district attorney informed the court that the AG had filed in the California Supreme Court a motion to recall the remittitur but did not know when the motion would be heard.[5]  Judge Barreto asked if a ruling from the Supreme Court was required before proceedings could continue in the case.  The deputy district attorney stated it depended on "what the court does as far as staying [the penalty phase retrial] or finding good cause to continue it."  Judge Barreto noted that the request to stay was before the California Supreme Court and he did not have "anything filed" before him.

The discussion then moved to "when the 60th day is" with respect to the issuance of the remittitur.  The deputy district attorney stated that she "noticed in the court file that the remittitur was not received here by the trial court until the 22nd of October."  Judge Barreto responded, "Yeah.  It got sent downtown where it - - I don't know, where it just sat around for some period of time."  The deputy attorney general pointed out that section "1382(a)(2) specifically states, received by the trial court . . . . which would be you."

Judge Barreto stated he would not hear argument or take a position on the status of the case and ordered the matter trailed for five days.  In preparation for that hearing, he asked the parties to read two cases, *Gallenkamp v. Superior Court* (1990) 221 Cal.App.3d 1 (*Gallenkamp*), and *People v. Malone* (1987) 192 Cal.App.3d 1096.

**E.      November 26, 2012 Hearing**

At the November 26, 2012 hearing, a deputy attorney general informed the court that it was the AG's position when they filed the Motion to Recall the Remittitur on November 16, 2012, that "the remittitur date was October 22nd."  Because the remittitur date had not been determined at the previous hearing, the AG filed an emergency petition for writ of mandate with the Supreme Court indicating a need for a decision by

---

[5]      The motion filed by the AG on November 16, 2012, was entitled "Motion to Recall the Remittitur and, Alternatively, to Stay the Penalty Phase Trial."

4

November 27, 2012.**6**

The deputy district attorney informed the court that the DA was seeking information from appellant's counsel as to appellant's disciplinary record in prison, and consequently had not yet made a decision whether to retry appellant on the death penalty phase. Appellant's counsel agreed to provide the requested information but was "not agreeable to continue the case." Appellant's counsel noted the two issues requiring the trial court's ruling: (1) "When was the remittitur filed with the Superior Court, so when's our last day?"; and (2) "Is there good cause to continue this case?"

Judge Barreto stated the Supreme Court issued the remittitur on September 26, 2012, and addressed the remittitur's envelope "to the Capital Appeals Unit of the Superior Court down on - - at the Criminal Justice Center down on 210 West Temple." The envelope arrived at the mail room at that location on September 28. Judge Barreto explained "somebody downtown . . . put it in a County messenger envelope and messengered it to the court administrator in our building"–the Airport Courthouse in the West District of the Los Angeles Superior Court. It was received on October 22nd "because that's where [the envelope] was stamped in [the Airport Courthouse] mail room." A one-page sheet containing "directions to the trial court" was added. The remittitur "found its way" to Judge Barreto on October 25th, and he immediately began making inquiries. Judge Barreto stated that he did not know if the remittitur had ever been filed with the court. He stated, "There's no file stamp on it. I only know that it was mailed somewhere, received in a mail room, forwarded to another mail room, and ultimately given to me, and that I received it October 25th, and I am the correct judge and the correct courtroom."

Appellant's counsel argued that September 28 was "the date it was filed in the

---

**6** The motion filed by the AG was entitled, "Emergency Petition for Writ of Mandate With Request for Immediate Temporary Stay of Penalty Phase Retrial Pending Resolution of November 16, 2012 Motion for Recall of Remittitur and Alternatively Stay."

Superior Court" because "the issue" is when the remittitur was received. Judge Barreto asked if appellant's counsel was arguing that "received in the superior court" regardless of "however broad it may be, however big the area is" satisfies the statute's requirement that the remittitur be "filed in the trial court." Appellant's counsel stated that was his position. Judge Barreto was engaged in another trial and informed the parties that he would make a decision in the afternoon.

When the parties reconvened in court that afternoon, Judge Barreto noted that the California Supreme Court had not granted the AG's request for stay. He summarized the parties' opposing positions. The defense's position was that "the clock started to run upon the receipt [of the remittitur] by the Capital Appeals section downtown of the Superior Court." The prosecution's position was that the time started when the remittitur was actually filed in the Airport Courthouse of the West District of the Los Angeles Superior Court. Noting that the remittitur had never actually been filed, the deputy district attorney argued that Judge Barreto could "nunc pro tunc it back to the date [he] got it" which was October 25th. Appellant's counsel argued that if clerical error was involved the benefit of that error should inure to appellant.

Judge Barreto ruled that the remittitur was filed by the trial court on October 22, 2012. He explained that the remittitur's receipt "downtown" did not mean it was "presented to any particular court for filing." He classified the date stamp of September 28th on the remittitur envelope that said "received" as "the type of thing that goes on in a mail room." It did not say filed. He noted that the remittitur envelope reached the Airport Courthouse on October 22nd. The Airport Courthouse manager "executed the document that goes with the remittitur" and forwarded it to Judge Barreto, who received it on October 25th. Remarking on the absence of any file stamp on the remittitur, Judge Barreto acknowledged that he could have given it to his court clerk on October 25th with directions to "file-stamp" it. He believed the remittitur "should have been file-stamped the day . . . the remittitur document was executed by [the courthouse manager], which is October 23rd." Judge Barreto stated that if he were to rule otherwise, it would mean "that if the matter sat downtown and nobody did anything, the time could run out." He

6

noted that Los Angeles "is a very big county, and the document could have been sent anywhere."

Looking to section 1382's language, Judge Barreto continued, "Now, it is one thing to say that when a matter is received at a particular location the clock should start to run, but the statute refers to the trial court." He contemplated whether the term "trial court" meant the court of the entire county, or the location where the case was tried. He concluded that the "reason for the statutory language" is to provide notice to the court "that would have to do the retrial" and not "some other place" or "some other office." In support of this interpretation he pointed out that section 1382 does not say a remittitur is filed "upon receipt by the clerk of the court of the county in which the case is tried." The statute uses the term "the trial court" and he concluded the use of that term "means something."

Judge Barreto determined that "the receipt by the Appeals Unit of the remittitur from the Supreme Court is not equivalent to a filing in the trial court of the remittitur." He ruled that the Airport Courthouse was "the trial court." Interpreting the statute so as to protect appellant's rights, he noted that although the remittitur was "acted on on the 23rd" the remittitur was received on October 22. He calculated the "60th day" and last day for trial to be December 21, 2012.

Judge Barreto indicated that the defense could make a motion to dismiss under section 1382 after November 27 because that was the "last day" based on the defense's argument that the remittitur should have been deemed filed on September 28. However, Judge Barreto indicated that he would deny such a motion consistent with his ruling and analysis. He ordered the deputy district attorney to have the AG inform the Supreme Court of his ruling, and he ordered all parties back on November 28 so that the defense could make its motion to dismiss.

## F.     November 28, 2012 Hearing

On November 28, 2012, Judge Barreto notified the parties that he was informed the California Supreme Court denied the AG's emergency petition for writ of mandate and request for immediate stay. He reminded the parties of his ruling and analysis in

7

determining that "the time began to run effective October 22nd," and computed that "today is Day 37 of 60."

Defense counsel moved to dismiss the proceedings as untimely under section 1382, subdivision (a). Defense counsel argued the remittitur was "filed" when it was received by the Capital Appeals Unit of the Los Angeles Superior Court on September 28. He surmised that more capital cases go to the California Supreme Court for review from Los Angeles County than any other county. He assumed there was a "procedure that's set" between the California Supreme Court and the Capital Appeals Unit of the Los Angeles Superior Court regarding the filing of remittiturs. He argued the superior court clerk's office "sat on" the remittitur for 30 days, resulting in a "failure to promptly file and execute a ministerial action."

Judge Barreto denied the defense's motion for the reasons he explained at the November 26 hearing. He noted that the motion concerned the penalty phase only and was "not really a dismissal" as the underlying conviction remained in place. He ordered the parties to return on December 11, which he calculated as day 50 of 60.

## G.      December 11, 2012, Hearing

On December 11, 2012, Judge Barreto was informed by the parties that there was an agreement to continue the matter to a date in January. Defense counsel stated that the parties would like "a date of January 23rd as a zero of 30 day." Based on conversations with the deputy district attorney, defense counsel was hopeful that a decision not to seek the death penalty might be reached soon. The deputy district attorney agreed to the proposed date. Appellant personally agreed that his "right to a speedy trial on retrial" of "the penalty phase . . . would be to have that commence within 30 days after [January 23, 2013]."

## H.      California Supreme Court Order re AG's November 16 Motion

On December 12, 2012, the Supreme Court denied the AG's original motion to recall the remittitur but stayed the penalty phase retrial "to permit respondent to file a petition for writ of certiorari in the Supreme Court of the United States." The order further stated: "Upon the filing of that petition, the penalty retrial is further stayed until

8

final determination of the certiorari proceeding. If a petition for writ of certiorari is not submitted within the time prescribed, this stay will terminate when the time for submitting that petition has expired."

## I. January 23, 2013, Hearing

On January 13, 2013, the deputy district attorney informed the court that the AG's office did not file a petition for certiorari within the prescribed time, and the DA's office was "not going to proceed with an additional penalty phase." Judge Barreto stated the Supreme Court stay was no longer in effect and because the People were not seeking a new trial in the penalty phase he would proceed to sentencing. The sentencing hearing was put over until February 6, 2013, because of problems obtaining arrest records and the preparation of probation reports.

## J. February 8, 2013, Sentencing Hearing[7]

At the February 8, 2013 sentencing hearing, Judge Barreto explained: "The original judgment, obviously, was the death judgment, and now it's going to be life without parole instead." Judge Barreto proceeded to sentence appellant to life without the possibility of parole on count 1, and a concurrent term of 25 years to life on count 2. Appellant was awarded 8,073 days of custody credit.

**DISCUSSION**

*Contention*

Appellant contends that his "sentence must be reversed and the case ordered dismissed because the People failed to bring [him] to retrial within the 60 days required by Penal Code Section 1382, subdivision (a) . . ." The crux of appellant's argument is that the remittitur was filed when it was received by the Los Angeles County Superior Court's Capital Appeals Unit on September 28, 2012. The 60-day period prescribed by section 1382 expired on November 27, 2012, and the trial court lacked jurisdiction to issue any rulings after that date. Therefore, appellant argues, the trial court violated his

---

[7] The parties appeared on February 6, 2013, but sentencing did not take place. Judge Barreto reordered the probation report and ordered the parties to appear on February 8, 2013.

federal and state constitutional rights to due process by sentencing him on February 8, 2013. He contends the sentence must be reversed and the case ordered dismissed.

The People contend section 1382 provides for dismissal of a felony action if the case is to be retried following appeal, but is not brought to trial within 60 days after the remittitur is filed. They argue that section 1382 does not apply to resentencing following a successful sentencing appeal. Alternatively, the People contend that even if section 1382 is applicable, there was no delay in sentencing. The People also argue that appellant failed to show that he was prejudiced by the trial court's denial of his motion to dismiss the penalty phase retrial.[8]

### *Legal Standards*

Article I, Section 15 of the California Constitution provides that "[t]he defendant in a criminal cause has the right to a speedy public trial . . ." This right has been implemented in part by the Legislature with the provisions of section 1382. Section 1382, subdivision (a)(2), provides in pertinent part, that the trial court "unless good cause to the contrary is shown, shall order the action to be dismissed . . . [i]n a felony case, when a defendant is not brought to *trial* within 60 days of the defendant's arraignment on an indictment or information, . . . or, in case the cause is to be *tried* again following a mistrial, an order granting a new trial from which an appeal is not taken, or an appeal from the superior court, within 60 days after the mistrial has been declared, after entry of the order granting the new trial, or after the filing of the remittitur in the trial court, or after the issuance of a writ or order which, in effect, grants a new trial, within 60 days after notice of the writ or order is filed in the trial court and served upon the prosecuting attorney, . . . ." (§ 1382, subd. (a)(2).)

---

[8]     We granted respondent's request to take judicial notice of the records in appellant's automatic appeal in California Supreme Court case number S056842 and the related proceedings in California Supreme Court case number S206842.

"'Good cause within the meaning of section 1382 exists, for example, when the delay beyond the statutory period is caused by the conduct of the defendant or occurs for his or her benefit . . . .'" (*People v. Villanueva* (2011) 196 Cal.App.4th 411, 424.) Section 1382, subdivision (a)(2), specifically codifies this concept by providing that "an action shall not be dismissed" if (1) the defendant enters a general waiver of the 60-day requirement, or (2) the defendant "requests or consents to the setting of a trial date beyond the 60-day period." (§ 1382, subd. (a)(2)(B).)

A Supreme Court remittitur is governed by Rule 8.540 of the California Rules of Court.[9] The Supreme Court must issue a remittitur after a decision in an appeal from a judgment of death. (Rule 8.540(a)(2).) The remittitur is deemed issued when the clerk enters it in the record. (Rule 8.540(b)(1).) After a decision in an appeal from a judgment of death . . . the clerk must send the remittitur and a file-stamped copy of the Supreme Court opinion or order to the lower court or tribunal. (Rule 8.540(b)(3).)

*Analysis*

In this case appellant's sole contention on appeal is that his case should be dismissed because he was not retried within the 60 days required by section 1382. By its plain language section 1382 applies when a defendant is not "brought to trial" or when "the cause is to be tried again." (§ 1382, subd. (a)(2).)

*People v. Domenzain* (1984) 161 Cal.App.3d 619 (*Domenzain*) makes it clear that the Penal Code does not equate resentencing with a new trial or retrial of the case. In *Domenzain*, the defendant's conviction was affirmed, but the matter was remanded for resentencing. The defendant was not resentenced for nine months. On his second appeal (following the resentencing), he claimed the trial court's failure to resentence him within

---

[9] All further references to a rule or rules unless otherwise stated, shall be to the California Rules of Court.

11

60 days required dismissal of the case under Penal Code section 1382. The appellate court disagreed, finding that "although Domenzain may correctly assert sentencing is part of speedy trial, the language, history, and context of [Penal Code] section 1382 preclude its application to sentencing or resentencing delay." (*Domenzain, supra,* 161 Cal.App.3d at p. 621.) The *Domenzain* court stated that section 1382 refers to the action being "tried again" without reference to sentencing, and concluded that "[t]he purpose of [Penal Code] section 1382 confirms that it was not intended to include resentencing. The Legislature was undoubtedly unsympathetic to the notion that a defendant convicted in a fair trial affirmed on appeal could escape punishment solely because he was not resentenced within 60 days after the filing of the remittitur." (*Domenzain, supra,* at p. 622, fn. omitted.)

Here, appellant's convictions for first degree murder were not overturned and all that remained was for appellant to be resentenced. Neither a right to a retrial nor the need for a retrial ever came into existence here. Therefore, section 1382 does not apply and there can be no violation of the statute as appellant asserts.

However, "[a] convicted defendant should not be subjected to unnecessary and indefinite delay before a new sentence is imposed." (*Domenzain*, *supra,* 161 Cal.App.3d at p. 623.) In the present case, appellant made no attempt to establish prejudice when arguing the dismissal motion in the trial court. On appeal, appellant does not assert prejudice resulted from the delay in sentencing, and no such prejudice appears in the record. Appellant was sentenced to life without the possibility of parole, plus a

concurrent term of 25 years to life.  Appellant's release date was not affected and he cannot show actual prejudice.  (*Domenzain, supra,* at p. 624.)

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J. *

FERNS

We concur:



_____, P. J.

BOREN


_____, J.

CHAVEZ

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.